**WILLEMIJN HOUDSTERMAATSCHAPPIJ, BV,**
Petitioner,

v.

**STANDARD MICROSYSTEMS CORPORATION,**
Respondent.

No. 95 Civ. 8544 (RO).

United States District Court,
S.D. New York.

May 14, 1996.

Morvillo, Abramowitz, Grand, Iason & Silberberg, New York City, Connolly, Bove, Lodge & Hutz, Wilmington, Delaware, Pollock, Vande Sande & Priddy, Washington, DC, for Petitioner Willemijn Houdstermaatschappij, BV.

Ziegler, Ziegler & Altman, New York City, Weingarten, Schurgin, Gagnebin & Hayes, Boston, Massachusetts, for Respondent Standard Microsystems Corporation.

OWEN, District Judge:

Willemijn Houdstermaatschappij, BV ("Willemijn") petitions this court to confirm an arbitration award which denied Standard Microsystems Corporation ("SMC") benefits under a most-favored-licensee clause contained in the parties' October 1, 1992 License Agreement. SMC's petition urges the court to vacate the award as manifestly unjust.

Willemijn is a holding company incorporated in the Netherlands whose primary business is the licensing of U.S. Patent Re. 31,-852 ("the '852 patent"). The '852 patent, which was issued in 1985 as a reissue of an earlier 1981 patent, describes a data communication system for transmitting information between a central master computer and several subordinated terminal units. SMC is a Delaware corporation which manufactures, among other products, interfaces permitting the connection of computers and peripheral equipment to token ring data communications systems; SMC's token ring systems conform with the 802.5 and FDDI standard promulgated by the Institute of Electrical and Electronic Engineers.

In a license agreement effective as of October 1, 1992, Willemijn granted SMC a non-exclusive license to manufacture and distribute data communication systems within the scope of the '852 patent as well as certain other auxiliary products. Article 5.9 of the Agreement provided that

> [i]f Willemijn, after execution of this agreement by both parties, grants a license under the Licensed Patent containing provisions that require payments at rates of royalty less than provided for in [the royalty provisions of the agreement], Willemijn shall promptly notify [SMC] of those royalty provisions. [SMC] shall then be entitled, upon written request ..., to substitute for [its royalty] provisions ... the corresponding provisions of such other li-

cense but only if [SMC] also agrees to accept any other terms and conditions of such other license identified by Willemijn to [SMC].

The parties agreed to submit any claims arising under the agreement to arbitration.

Almost five years earlier, in 1988, Willemijn and another of its licensees, Proteon, Inc., had submitted to arbitration the question whether the '852 patent covered 802.5 and FDDI token ring systems manufactured by Proteon. The Proteon–Willemijn arbitration panel concluded on April 13, 1994 that the '852 patent did not cover Proteon's token ring data communication systems. *See* Arbitration Award No. 13 133 00789 92 (Apr. 13, 1994). The decision followed the U.S. Patent and Trademark Office's issuance of a reexamination certificate on October 20, 1992 confirming, after two years of reexamination proceedings, that the '852 patent did not cover token ring data communication systems. Proteon subsequently petitioned for a confirmation of the award in the Southern District of New York. However, before the court acted and in order to avoid further litigation, Willemijn and Proteon entered into an agreement effective May 3, 1994, pursuant to which Willemijn granted Proteon immunity from suit under the '852 patent. Accordingly, the court never acted on the petition. Willemijn at no time advised SMC of its dispute with Proteon, the arbitration demand, or the arbitration award.

On November 17, 1994, SMC demanded arbitration before the American Arbitration Association in accordance with the license agreement. SMC alleged that Willemijn had breached the agreement by granting Proteon a royalty-free license to manufacture products covered by the '852 patent without notifying SMC and offering it equally favorable terms. SMC also claimed that Willemijn had fraudulently induced it to enter into the agreement by failing to disclose the contemporaneous arbitration proceeding with Proteon.

On September 28 and 29, 1995, the three-member arbitration panel issued the following decisions:

1. Did WILLEMIJN HOUDSTER-MAATSCHAPPIJ, BV, hereinafter referred to as RESPONDENT, fraudulently induce STANDARD MICROSYSTEMS CORPORATION, hereinafter referred to as CLAIMANT, to enter into the License Agreement by failing to disclose the commencement of an arbitration proceeding between RESPONDENT and a third party, Proteon, Inc.?

Decision: No, by all the Arbitrators. Hence, there is no basis for a return of any monies paid by CLAIMANT to RESPONDENT pursuant to the License Agreement between them.

.    .    .    .    .

3. Was the Most Favored License (MFL) clause 5.9 in the License Agreement between the Parties brought into effect to the benefit of CLAIMANT by the granting of an immunity of suit under U.S. Patent Re. 31,852 in a Settlement Agreement, dated May 3, 1994, between RESPONDENT and one of its former Licensees, Proteon, Inc., and was the License Agreement breached when RESPONDENT did not notify CLAIMANT of the Settlement Agreement or offer CLAIMANT the terms provided therein?

Decision: No, by Arbitrators Ronald Abramson and Louis H. Reens.

Arbitrator Garold E. Bramblett finds that as of May 3, 1994, the date of the Settlement Agreement between Proteon and RESPONDENT, the Most Favored Licensee clause 5.9 entitled CLAIMANT to a zero percent royalty rate.

AAA No. 13 T 184 00996 94 (Sept. 28–29, 1995).[1] SMC's petition to vacate the award and Willemijn's cross-petition to confirm the award were duly filed shortly thereafter.

■ The purpose of a most-favored-licensee clause is "to protect [a licensee] from a competitive disadvantage resulting from more favorable terms granted to another licensee." *Studiengesellschaft Kohle m.b.H. v. Novamont Corp. nna.*, 704 F.2d 48, 53 (2d Cir.1983). In this case, Willemijn granted Proteon immunity from suit after Proteon, before three arbitrators, had successfully

---

1. The panel also sanctioned SMC's counsel for      his conduct during discovery.

challenged the scope of Willemijn's patent under their license agreement. Having bargained for and received a most-favored-licensee clause, SMC was entitled to no less than a royalty-free license once Proteon was released from the obligation to pay royalties. To conclude otherwise would place SMC at a severe competitive disadvantage with respect to Proteon.

■ Two of the three arbitrators here, however, reached the conclusion that SMC was not entitled to the benefit of its bargain. Since the arbitrators have given no explanation for their decision, as is their right, *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 598, 80 S.Ct. 1358, 1361–62, 4 L.Ed.2d 1424 (1960), I must confirm the award "if a ground for [their] decision can be inferred from the facts of the case." *Sobel v. Hertz, Warner & Co.*, 469 F.2d 1211, 1216 (2d Cir.1972).

Willemijn offers two possible explanations for the arbitrators' decision. First, that the 1994 Willemijn–Proteon agreement did not trigger SMC's most-favored-licensee clause. Willemijn concedes that its agreement with Proteon constitutes a license. Indeed, it is well established that a patent holder grants a license by agreeing "not to seek an injunction against infringement and not to sue for damages therefore." *Shatterproof Glass Corp. v. Libbey–Owens–Ford Co.*, 482 F.2d 317, 320 (6th Cir.1973); *see General Talking Pictures Corp. v. Western Electric Co.*, 304 U.S. 175, 181, 58 S.Ct. 849, 852, 82 L.Ed. 1273 (1938) (acknowledging that the grant of a non-exclusive license amounts "to no more than a mere waiver of the right to sue" (internal quotation marks omitted)).

Willemijn nevertheless asserts that the 1994 Willemijn–Proteon agreement did not trigger SMC's most-favored-licensee clause because it did not contain any provisions "requir[ing]" the "payment" of "royalt[ies]." Willemijn's expert testified before the panel that SMC's most-favored-licensee clause was "very narrow" and evinced the parties' intent that only a subsequent license which "require[d] payment" at a lower "rate of royalty" would entitle SMC to seek substitution of its royalty provisions. Because the 1994 agreement only granted Proteon immunity

from suit, it did not in any way reduce or alter Proteon's obligation to pay royalties, which remained operative (if unenforceable). In other words, if the 1994 agreement provided that Proteon was "required" to "pay" a "rate of royalty" of 0.0001% (or even a "rate" of zero percent, for that matter), SMC would be entitled to a substitution of terms; however, because the agreement merely waived Willemijn's right to demand payment of any royalties due, SMC is not entitled to substitution.

■ This argument is meritless. A licensor's grant of immunity from suit in settlement of a dispute under a prior license agreement is "the equivalent of a license" and may trigger another licensee's most-favored-licensee clause. *See Novamont*, 704 F.2d at 55. By relinquishing the right to sue for royalties, Willemijn has granted Proteon a royalty-free license. *Cf. Cold Metal Process Co. v. McLouth Steel Corp.*, 170 F.2d 369, 377 (6th Cir.1948). To conclude otherwise would allow Willemijn to eviscerate the effect of SMC's most-favored-licensee clause by, for example, "requiring" a subsequent licensee to pay a higher royalty rate and then waiving the right to sue for all or part of that rate. The arbitrators could not have seriously considered Willemijn's argument that the parties intended this construction and the untenable outcomes it could generate. I note that Willemijn's expert offered no explanation why anyone would make such a distinction, let alone consent to it. *See John T. Brady & Co. v. Form–Eze Sys., Inc.*, 623 F.2d 261, 264 (2d Cir.) (binding courts to uphold an arbitrator's interpretation of a contract "so long as it is barely colorable"), *cert. denied*, 449 U.S. 1062, 101 S.Ct. 786, 66 L.Ed.2d 605 (1980).

■ Second, Willemijn argues that SMC is not entitled to a substitution of royalty provisions because it cannot accept all the terms and conditions of the 1994 Willemijn–Proteon agreement as required by the most-favored-licensee clause. In exchange for immunity from suit, Proteon agreed to dismiss its petition to confirm an arbitration award releasing it from the obligation to pay further royalties to Willemijn under the '852 patent.

SMC does not possess a similar arbitration award ripe for confirmation. Willemijn therefore presumes that SMC is unable to "agree to accept" this additional term.

Under Willemijn's proposed interpretation of the license agreement, it may freely evade its duty to offer comparable terms to SMC simply by making any more favorable arrangement extended to another licensee contingent upon a condition which is inapplicable to SMC. The Second Circuit rejected precisely this argument in *Novamont,* 704 F.2d at 53–54. There the licensor had granted a subsequent licensee a more beneficial royalty provision containing a condition inapplicable to a prior most-favored licensee.[2] The court rejected the condition precedent and extended the more beneficial provision to the most-favored licensee, noting that "giving literal effect" to the condition "would be an evasion of the intention of the parties to the clause." *Id.* at 53.

It is also irrelevant that the 1994 Willemijn–Proteon agreement merely implemented an arbitration award that already released Proteon from an obligation to make royalty payments. SMC bargained for the right not to be placed at a competitive disadvantage by Willemijn. The question whether Proteon could have continued manufacturing products without obtaining a license from Willemijn "is not germane to any purpose of the MFL clause." *Id.* As the Second Circuit noted in *Novamont,*

> [i]t is likely to be generally true that a licensor's grant of more favorable terms is supported by a sound business reason, but the benefit of more favorable terms is exactly what the person whose license includes an MFL clause has bargained for and to which he is entitled.

*Id.* at 53. SMC has agreed not to pursue any further claims, either before a panel of arbitrators or in court, regarding the validity

of the '852 patent. It was therefore unquestionably entitled to enjoy the same royalty-free license extended to Proteon.

Since Willemijn's arguments before the panel fail and since I can conceive of no other basis for the arbitrators' decision, I conclude that the two arbitrators in the majority manifestly disregarded and failed to honor the "well-defined, explicit, and clearly applicable" terms of the parties' agreement, *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker,* 808 F.2d 930, 933–34 (2d Cir.1986), and that they disregarded as well the law that a party is entitled to the benefit of terms clearly stated and intended in such a contract. Were it not for what happened here, this fundamental principle of contract law would hardly need iteration. *See, e.g., Broadway Nat'l Bank v. Progressive Cas. Ins. Co.,* 775 F.Supp. 123 (S.D.N.Y.1991), *aff'd,* 963 F.2d 1522 (2d Cir.1992). There the District Court stated:

> [W]here the terms of [a contract] are unambiguous, they must be given their plain and ordinary meaning, and a court must refrain from rewriting the agreement. Under such circumstances, the question is one of law, and summary judgment is proper. In the words of Judge Weinfeld:
>
>> Contracts of insurance, like other contracts are to be construed to effectuate the parties' intent as expressed by the words the parties used, and if the terms of the contract are clear and unambiguous, the Court must enforce the plain, ordinary and common meaning of those terms.

*Id.* at 127 (citations omitted). An award given by arbitrators who ignore this principle may be vacated in accordance with the standard articulated in *Merrill Lynch:*

> "Manifest disregard of the law" by arbitrators is a judicially-created ground for vacating their arbitration award, which

---

2. In *Novamont,* the licensor (Ziegler) permitted a subsequent licensee (Diamond Shamrock Chemical Company) to "hold and accrue royalties ... during any period during which Ziegler is engaged in a suit for patent infringement ... being defended by a party under a contractual obligation to hold [Diamond] harmless." 704 F.2d at 53. Ziegler subsequently commenced an infringement action against Phillips Petroleum,

which had sold its allegedly infringing operations to Diamond and had undertaken to hold Diamond harmless against any infringement claims. Novamont, a prior licensee of Ziegler's, did not enjoy the protection of a hold-harmless agreement from Phillips and therefore would not benefit from the literal substitution of its terms with Diamond's terms.

was introduced by the Supreme Court in *Wilko v. Swan*, 346 U.S. 427, 436–37, 74 S.Ct. 182, 187–88, 98 L.Ed. 168 (1953).... Although the bounds of this ground have never been defined, it clearly means more than error or misunderstanding with respect to the law. The error must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator. Moreover, the term "disregard" implies that the arbitrator appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention to it.

808 F.2d at 933 (citations omitted). In the case before me, the two arbitrators did not merely err or misunderstand the law; they disregarded the fundamental tenet of contract law that the unambiguous terms of an agreement are to be honored. The disregard here was all the more manifest when, in this stark and compelling setting, it was cloaked by the majority of the arbitrators in the single word "no."

Accordingly, SMC's petition to vacate the arbitration award is granted and the award is vacated; Willemijn's cross-petition to confirm the award is denied.