**BAY NETWORKS GROUP, INC., Petitioner,**

v.

**WILLEMIJN HOUDSTERMAATSCHAPPIJ, B.V., Respondent.**

No. 97 CIV. 8457(RO).

United States District Court, S.D. New York.

Sept. 18, 1998.

---

**12.** *See, e.g., Johnson v. Nyack Hosp.*, 891 F.Supp. 155, 162–66 (S.D.N.Y.1995), *aff'd on other grounds*, 86 F.3d 8 (2d Cir.1996).

Weingarten Schurgin Gagnebin & Hayes, Paul J. Hayes, Dean G. Bostock, Boston, MA, for Petitioner.

Donovan Leisure Newton & Irvine, Stephen G. Foresta, New York, NY, Connolly Bove Lodge & Hutz, Paul E. Crawford, Wilmington, DE, for Respondent.

## OPINION

OWEN, District Judge.

Petitioner, Bay Networks Group, Inc. (Bay) seeks confirmation of an arbitration award rendered by the International Chamber of Commerce (ICC) on October 6, 1997. Respondent, Willemijn Houdstermaatschappij, B.V. (Willemijn), cross-petitions to vacate the same.[1] For the reasons stated below, I grant Bay's petition for confirmation.

On January 1, 1991, Willemijn and Bay's predecessor, SynOptics Communications, Inc.,[2] entered into a patent licensing agreement in which Willemijn's "Patent 852" was nonexclusively licensed to SynOptics, allowing SynOptics to produce and sell certain computer communication system products in return for royalty fees payable to Willemijn. On June 2, 1992, the parties replaced the 1991 agreement with an "Agreement of Substitution" (the Agreement). Article XII of the Agreement provides that all disputes other than patent infringement or validity will be submitted to arbitration under ICC rules. It also contains a "most favored licensee" clause (MFL clause), in which Willemijn agreed to give SynOptics any more favorable royalty rates that Willemijn might subsequently grant to another licensee. In April 1995, SynOptics, now Bay, instituted an arbitration proceeding, claiming that Willemijn had breached the MFL clause by giving a more favorable royalty rate to another licensee, Proteon, Inc.

Proteon was, in fact, paying no royalty to Willemijn. Although Proteon had been Willemijn's licensee since 1988, in 1994 an American Arbitration Association panel determined in a 2–1 decision that Proteon need pay no further royalties because its products were not covered by the "852 patent" (Proteon Award). But, *prior* to confirmation of the Proteon Award, Willemijn and Proteon entered a May 11, 1994 agreement (the Proteon Agreement) in which Willemijn agreed to give Proteon immunity from suit on its patent, and the Proteon Award was never confirmed. It was when Bay learned of Proteon's immunity that it stopped paying Willemijn royalties, citing the MFL clause, and instituted a successful arbitration before the ICC to recover earlier-paid royalties.

Bay now seeks confirmation of the October 6, 1997 award, which granted Bay:

(1) a monetary award of $294,465.00;

(2) interest at the annual rate of 9%: (a) on $160,140.00 from October 21, 1994; (b) on $84,000.00 from July 28, 1994; and (c) on $50,325.00 from July 28, 1994;

(3) costs of arbitration in the amount of $21,810.61.

Willemijn contends, however, that the arbitration panel showed manifest disregard for the law by bypassing the earlier, unconfirmed Proteon Award, instead treating the later Proteon Agreement as the breach of the MFL clause between Willemijn and Bay. Willemijn's argument is that the Proteon Agreement merely confirmed and memorialized the Proteon Award of no coverage under the patent, did not therefore grant a lower

---

1. Bay is a Delaware corporation principally operating from Santa Clara, California, while Willemijn is a Dutch corporation with its principal place of business in Rotterdam, The Netherlands. Accordingly, while federal question jurisdiction lies under 28 U.S.C. § 1332, by virtue of the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.,* jurisdiction also lies in the parties' diversity of citizenship.

2. In January 1995, SynOptics changed its name to Bay Networks Group, Inc.

royalty, and did not thus create the "competitive disadvantage" to Bay that implicates an MFL clause.

 This court's function in reviewing arbitration awards for confirmation or vacatur is extremely limited. *See Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997) (quoting *Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp.*, 274 F.2d 805, 808 (2d Cir.1960)). While vacatur is allowed when arbitrators *have* acted with manifest disregard of the law, *Wilko v. Swan*, 346 U.S. 427, 436–37, 74 S.Ct. 182, 98 L.Ed. 168 (1953), the party so contending, here Willemijn, has a high burden to meet. *Willemijn Houdstermaatschappij, BV*, 103 F.3d at 12. An award must be upheld "[e]ven if [the court] were to disagree with the arbitration panel's interpretation," *id.* at 14, and manifest disregard "requires 'something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law' [and may be found only if] the arbitrator 'understood and correctly stated the law but proceeded to ignore it.'" *Id.* at 12 (citations omitted). After reviewing the parties' submissions as well as considering their arguments, I cannot conclude that the Panel here manifestly disregarded the law. Bay's petition to confirm the award is granted, and Willemijn's cross-petition to vacate the same is denied.[3] This result is compelled by the stringent limitations upon review of arbitration awards by the courts, although it leaves diametrically opposite competitive impacts on three licensees of the same patent as observed hereafter.

The first licensee of Willemijn that was involved was Proteon. Proteon had gotten an arbitration award that what it was manufacturing was not infringing Willemijn's patent. Before confirmation Willemijn gave Proteon an agreement provided for immunity from suit for failure to pay royalties. The award was never confirmed.

Next was Standard Microsystems Corporation, ending with the Court of Appeal's opinion in *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9 (2d Cir.1997), which involved essentially the same license, facts and issues, although the different licensee, Standard. There, the majority of the arbitration panel, without opinion, announced that notwithstanding the Proteon immunity from suit agreement, there was no breach of the MFL clause as to Standard, and Standard was bound to pay royalties as per its contract with Willemijn. Obviously, in that arbitration, the economic effect was the reverse of Proteon. At that time, the *Standard* case being before me in the District Court, I vacated the award viewing it as manifest disregard of clear, established contract law that an unambiguous contract term to grant most favored licensee treatment on royalties was required to be honored. *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 925 F.Supp. 193, 198 (S.D.N.Y.1996). That conclusion was reversed by the Court of Appeals based on its view that, the judicial review of arbitration awards being severely limited, the panel had factually available to it and could have based its conclusion on the "barely colorable basis" that Willemijn's patent was not being infringed and, thus, it was the Proteon *Award* that had relieved Proteon of royalty payments and therefore the subsequent contractual im-

---

**3.** I initially observe that Bay contends that Willemijn's cross-petition to vacate violates ICC rules, which Bay claims preclude appeal. Article 24 of the ICC Rules provides that an arbitral award thereunder is final and that "[b]y submitting the dispute to arbitration under the [ICC] rules, the parties shall be deemed … to have waived their right to any form of appeal insofar as such waiver can validly be made." Thus, the question is whether such a waiver can be validly made under the law. The Sixth Circuit has held that such a reading of Article 24 cannot stand because it would completely nullify protections against fraud and other wrongdoing that Con-

gress maintained in the FAA's Section 10. Moreover, the Second Circuit has disapproved a rationale similar to Bay's under the Iran–United States Claims Tribunal rules, stating that "where parties agree to 'final' or 'binding' arbitration, … the terms 'final' and 'binding' merely reflect the contractual intent that the issues joined and resolved in the arbitration may not be tried de novo in any court." *Iran Aircraft Indus. v. Avco Corp.*, 980 F.2d 141, 145 (2d Cir.1992). Finally, numerous ICC awards have been reviewed by the federal courts. I accordingly conclude that Willemijn's cross-petition can be properly considered.

munity from suit granted by Willemijn to Proteon by its Agreement was not what put licensee Standard at a competitive disadvantage. *Willemijn Houdstermaatschappij, BV,* 103 F.3d at 13.

In the petition now before me, however, as to the third arbitrating licensee, Bay, the Panel concluded that the Proteon Award was irrelevant because it was Willemijn's *Agreement* to give favorable treatment to Proteon that triggered the MFL. Accordingly, given the extreme restraints on judicial review of arbitration awards, Willemijn's argument regarding the instant Panel's manifest disregard of that law fails, even though the result here obviously is the same as in Proteon and the reverse of Standard, and creates a troublesomely inequitable contradiction in the different treatment of different licensees of the same patent under identical contracts with the licensor under identical facts. This is so because the Panel in this case, in a written majority opinion stated the basis for its conclusion:

> Since Bay Networks was not a party to the *Willemijn v. SMC* arbitration, Bay Networks cannot be bound by the outcome in that case. We do, however, find the reasoning of Judge Owen in that *SMC* case [925 F.Supp. 193] to be persuasive. In our opinion, Bay Network was entitled, under the MFL clause in its agreement with Willemijn, to the benefit of the royalty free license between Proteon and Willemijn.

> \* \* \* \* \* \*

> Under New York law which governs the contract between the parties, full effect must be given to the plain meaning of the language in the agreement and that language cannot be construed in such as way as to distort its clear meaning. *Slamow v. Delcol,* 174 A.D.2d 725, 571 N.Y.S.2d 335 (2d Dept.1991).

> \* \* \* \* \* \*

> The award in the arbitration between Willemijn and SMC is not controlling here. The fact that, based upon the outcome of its arbitration, SMC must still pay royal-

ties under its license with Willemijn is irrelevant to Bay Networks [sic] entitlement to the benefits of the MFL clause in its license with Willemijn. Bay Networks, not having been a party to the ·SMC– Willemijn arbitration, is not bound by the decision therein.

ICC Award Sentence, pp 18, 21.

This clearly satisfies the "barely colorable" test of *Willemijn Houdstermaatschappij, BV,* 103 F.3d at 13, and mandates confirmation.

Willemijn also claims it was denied a full hearing on the issue of whether Bay had a right to a refund and cites section 10(a)(4) of the Federal Arbitration Act,[4] contending that the Panel exceeded its power by ordering a refund of the royalties Bay paid from the date of the Proteon Agreement.

The Panel dealt initially with liability under the MFL clause, and later with damages, including the refund. Thus, in the first instance, Willemijn requests that the refund portion of the Award be vacated, contending that the Panel's *"sua sponte"* bifurcation of claims denied it an opportunity to be heard because, although the MFL claims received a full hearing, the refund determination was based upon briefing alone. According to Willemijn, this exceeded the Panel's authority because the Panel ruled on issues not fully presented by the parties. *See Dighello v. Busconi,* 673 F.Supp. 85, 87 (D.Conn.1987), *aff'd,* 849 F.2d 1467 (2d Cir.1988). Bay responds that Willemijn complied in full with the Panel's briefing schedule, at no time protesting a determination on submission. Accordingly, the Panel's conclusions are confirmed on this issue.

In sum, Bay's petition to confirm is granted, and Willemijn's cross-petition to vacate is denied.

Submit order on notice.

---

**4.** This section provides that an arbitration may be vacated by a district court "[w]here the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4).