FOLKWAYS MUSIC PUBLISHERS, INC., Plaintiff–Appellant,

v.

George David WEISS, June Peretti, Luigi Creatore and Abilene Music Corp., Defendants–Appellees.

No. 929, Docket 92–9061.

United States Court of Appeals, Second Circuit.

Argued Feb. 12, 1993.

Decided March 26, 1993.

Robert C. Osterberg, New York City (Abeles Clark and Osterberg, of counsel), for plaintiff-appellant.

David Blasband, New York City (John M. Daly, Deutsch Klagsbrun & Blasband, of counsel), for defendants-appellees.

Before: OAKES and PIERCE, Circuit Judges.*

OAKES, Circuit Judge:

Plaintiff, Folkways Music Publishers, Inc. ("Folkways") appeals from an order of the Southern District of New York, John F.

---

* The Honorable Amalya L. Kearse, *Circuit Judge*, who was originally scheduled to be a member of the panel, recused herself prior to oral argument.

Keenan, *Judge*, confirming an arbitration award and granting summary judgment to defendants, George David Weiss, June Peretti, Luigi Creatore (the "Songwriters"), and Abilene Music Corporation. The district court found that the arbitrators, who had granted renewal rights in the song "The Lion Sleeps Tonight" to the Songwriters, had not exceeded their authority or manifestly disregarded the law. We affirm.

### BACKGROUND

This appeal involves a song entitled "The Lion Sleeps Tonight" (the "Lion version") written by the Songwriters which Folkways claims infringes its copyright in the songs "Mbube" and "Wimoweh." According to Folkways, the underlying music for the latter two songs was composed by Solomon Linda who assigned all rights, title, and interest in his song, called "Mbube," to Gallo Africa, Ltd. ("Gallo") in 1952. On May 7, 1952, Gallo registered a claim to copyright "Mbube" in the United States. After the expiration of the original term on December 31, 1980, the renewal rights in the song vested in Linda's widow. Allegedly, she thereafter assigned Folkways all of her rights in "Mbube."

In 1951, Pete Seeger and the Weavers, under the pseudonym Paul Campbell ("Campbell") wrote a new arrangement of "Mbube" entitled "Wimoweh." Campbell assigned all rights and copyright interests in "Wimoweh" to Folkways which subsequently registered a claim to copyright the song on January 17, 1952. On November 30, 1979, the original term of the copyright was renewed in Campbell's name and thereafter assigned to Folkways.

In 1961, the Songwriters wrote another version of "Wimoweh," the Lion version, which was published by Token Music Publishing Company ("Token"). Token registered a claim to copyright on October 17, 1961, and licensed the use of the Lion version for phonograph records and public performance. On October 31, 1961, Folkways alerted Token of its claim that the Lion version infringed its copyright in "Wimoweh."

In response, Token ceded its rights as publisher of the Lion version to Folkways and the Songwriters entered into the agreement which is the subject of this suit. The Songwriters allegedly executed five documents, including acknowledgements of the infringement and assignments of rights in the Lion version to Folkways. Two of these documents are central to the disposition of this case. On November 6, 1961, Folkways drafted a letter which was signed by the Songwriters, providing for a distribution of public performance royalties payable by Broadcast Music, Inc., Folkways' performing rights society, for uses of the Lion version. In addition, the parties entered into a "Standard Popular Songwriter Contract" ("the Agreement") also dated November 6, 1961. This contract transferred and assigned all rights in the Lion version to Folkways, including "the right to secure copyright therein throughout the entire world and to have and to hold the said copyright and all rights of whatsoever nature thereunder existing, subject to the terms of this agreement." On December 18, 1961, Folkways registered a claim to copyright in the Lion version. This original term expired on December 31, 1989.

Folkways alleges that in October 1989, Weiss on behalf of the Songwriters notified it that he believed Folkways' rights to be limited to the original term of the copyright. He stated that, subsequent to the expiration of the initial copyright term, the Songwriters would exercise their rights in the Lion version absent payment from Folkways for rights in the renewal term. Folkways refused and the Songwriters filed a demand for arbitration on September 13, 1990 pursuant to the 1961 Agreement.

In their demand, the Songwriters sought a declaration that they were "the sole and exclusive owners of all rights in and to the [Lion version], including worldwide copyright, since the composition entered its United States renewal term of copyright." They also sought to compel Folkways to notify its licensees that it no longer had any interest in the copyright in the Lion

version. Lastly, the Songwriters requested they be awarded all revenue Folkways had received since the beginning of the renewal term stemming from use of the Lion version. Folkways then filed a copyright infringement action in the district court. Folkways argued that the Songwriters' use of the Lion version since the beginning of the renewal term infringed on its rights not only in the Lion version but also in "Mbube," "Wimoweh," and one other version of the song owned by Folkways ("the underlying works"). Folkways also asked the district court to stay the arbitration or limit its scope to renewal rights in the Lion version. The district court granted the Songwriters' demand for arbitration and denied Folkway's motion. *Folkways Music Publishers, Inc. v. Weiss*, No. 90 Civ. 6415, 1991 WL 64183, 1991 U.S.Dist. LEXIS 5048 (S.D.N.Y. Apr. 17, 1991).

The arbitration panel ruled that rights to the Lion version had reverted to the Songwriters at the end of the initial copyright term and that the Songwriters "shall have the right to exploit the Composition free of any and all claims from Folkways...." The award, however, did not explicitly discuss whether the Songwriters' use of the Lion version would infringe on Folkways' copyrights in the underlying works. Nonetheless, the arbitrators did say quite plainly that Folkways would have no claims against the Songwriters' use of the Lion version.

Folkways thereafter moved the district court to vacate, modify or correct the arbitration award. Although Folkways conceded that the award grants renewal rights to the Lion version to the Songwriters, it contended that the award does not grant these rights free from infringement claims concerning the underlying works. In the alternative, Folkways argued that, if the award is read to concede such rights, then the arbitrators exceeded their powers. The district court found that the clear language of the award granted the Songwriters the right to exploit the Lion version free from any claims by Folkways, including claims for infringement of the underlying works. Moreover, the court stated, the arbitrators had not exceeded their powers in determin-

ing rights to the underlying works in light of the court's initial refusal to limit the scope of arbitration to the renewal rights alone. The court then affirmed the award and granted summary judgment to the Songwriters. *Folkways Music Publishers, Inc. v. Weiss*, No. 90 Civ. 6415, 1992 WL 230192, 1992 U.S.Dist. LEXIS 13006 (S.D.N.Y. Aug. 31, 1992).

## DISCUSSION

Folkways appeals from the affirmance on alternative grounds: first, it argues that the district court misinterpreted the award in finding that it resolved rights to the underlying music; second, it contends that if the district court was correct in its finding that the award determined the rights to the underlying music, then the arbitrators exceeded their powers; third, it claims that if the district court's interpretation was correct then the award is irrational and in manifest disregard of the law.

Initially, Folkways contends that the district court misunderstood the import of the arbitration award. The award stated that "[a]ll rights in and to the composition 'The Lion Sleeps Tonight' (the 'Composition') shall revert to [the Songwriters].... CLAIMANTS shall have the right to exploit the Composition free of any and all claims from Folkways...." The district court found that this language clearly barred any infringement claims by Folkways against the Songwriters based on rights to the underlying music. In opposition, Folkways argues that the district court misread the words "[c]omposition" and "revert," ignoring the "obvious" meaning they have in the award. According to Folkways, "composition" can only refer to the original material added by the songwriters to the Lion version and not to the aspects of the Lion version which stem from the underlying works. Moreover, they argue that material never owned by the Songwriters cannot "revert" to them. As the district court noted, however, the arbitrators determined that the Songwriters had the right to exploit the composition "free of *any* and *all*' claims" from Folkways. *Folkways Music Publishers,*

*Inc.*, 1992 WL 230192, at *5, 1992 U.S. Dist. LEXIS 13006, at * 14 (emphasis added). In finding that the award encompassed rights to the underlying works, the district court properly interpreted the award.

In effect, Folkways argues that this is an improper understanding of the law of copyright, that the arbitrators could not have been mistaken as to the law, and thus that the district court incorrectly interpreted the award. As the district court's reading of the award is proper, this argument is really a challenge to the validity of the arbitrators' award and not to the district court's review. We deal with this challenge below.

■ Folkways' second argument focuses on the arbitration award itself, attacking the breadth of the arbitrators' determination. Arbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation. *Barbier v. Shearson Lehman Hutton, Inc.*, 752 F.Supp. 151, 158 (S.D.N.Y.1990), *aff'd in part, rev'd in part*, 948 F.2d 117 (2d Cir. 1991).

Sections 10 and 11 of the Federal Arbitration Act set forth the narrow grounds on which a court may vacate an arbitration award. In Section 10, the Act permits review for evidence of "corruption, fraud, undue means, evident partiality or corruption in the arbitrators, specified misconduct or misbehavior on their part, or '[where] the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.'" *Carte Blanche (Singapore) Pte., Ltd. v. Carte Blanche Int'l, Ltd.*, 888·F.2d 260, 264–65 (2d Cir.1989) (quoting 9 U.S.C. § 10 (1982)). Section 11 "provides for modification or correction of an award in the case of an 'evident' and 'material' miscalculation of a figure or a misdescription of a person, thing or property, where the arbitrators have awarded upon a matter not submitted to them, or where there is an error in form not affecting the merits of the controversy." *Id.* at 265. These clauses prohibit arbitrators from determining any issues outside the scope of the arbitration clause unless necessary to resolve the issue before them. *See Federal Commerce & Navigation Co., Ltd. v. Kanematsu–Gosho, Ltd.*, 457 F.2d 387, 389 (2d Cir. 1972).

■ Folkways, as the party challenging the award, bears a heavy burden of proof. *Ottley v. Schwartzberg*, 819 F.2d 373, 376 (2d Cir.1987). In the order to proceed with arbitration, the district court stated that the arbitrators may pass on the issue of rights to the underlying music. The district court found that the broad language of the Agreement, which required arbitration as to "'any and all differences, disputes or controversies arising out of this contract'..." permitted such a determination. *Folkways Music Publishers, Inc.*, 1991 WL 64183, at *3, 1991 U.S.Dist. LEXIS 5048, at * 11 (quoting the Agreement). We agree that this language granted the arbitrators the scope to determine rights in the underlying works. As such, we cannot say that the arbitrators exceeded their authority in reaching this issue.

■ Lastly, Folkways contends that the arbitrators' decision was in "manifest disregard" of the law. In order to advance the goals of arbitration, courts may vacate awards only for an overt disregard of the law and not merely for an erroneous interpretation. *See Wilko v. Swan*, 346 U.S. 427, 436–37, 74 S.Ct. 182, 187–88, 98 L.Ed. 168 (1953). As we noted in *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d 930 (2d Cir.1986),

> "[m]anifest disregard of the law" by arbitrators is a judicially-created ground for vacating their arbitration award.... it clearly means more than error or misunderstanding with respect to the law. The error must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator."

*Id.* at 933 (citations omitted). *See also Office of Supply, Gov't of Rep. of Korea v. New York Nav. Co., Inc.*, 469 F.2d 377, 380 (2d Cir.1972) ("[T]his judicially-created addition to the proscriptions of 9 U.S.C. § 10 is

'severely limited.' "). In order to vacate for "manifest disregard," a court must find that the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether. *Id.* Moreover, the law ignored by the arbitrators must be "well defined, explicit, and clearly applicable" if the award is to be vacated. *Carte Blanche (Singapore) PTE., Ltd.,* 888 F.2d at 265 (quoting *Bobker,* 808 F.2d at 934).

■ Awards may also be remanded to the arbitrators if ambiguous or incomplete. *Ottley,* 819 F.2d at 376. However, a lack of accompanying justification for the award will not render the award ambiguous or in manifest disregard of the law. Arbitrators need not give reasons for their determinations. *Wilko,* 346 U.S. at 436, 74 S.Ct. at 187 (1953).

In affirming the award, the district court found that "the arbitration panel had [ ] authority, showed no disregard for the law, and unambiguously granted the defendants ownership of the rights to the Lion version free from 'any and all' claims—including claims for infringement of the underlying works." *Folkways Music Publishers, Inc.,* 1992 WL 230192, at * 5, 1992 U.S. Dist. LEXIS 13006, at * 14. We agree with the district court that Folkways failed to show that the arbitrators acted in manifest disregard of the law. There is simply no evidence that they willfully ignored the plain requirements of the law.[1] As the district court noted:

> The award conclusively resolves the issues of the ownership of the renewal term rights in the Lion version, the exclusivity of those rights from claims of infringement in the underlying works, and the distribution of the royalties accumulated after the expiration of the original copyright term.

*Folkways Music Publishers, Inc.,* 1992 WL 230192, at * 6, 1992 U.S.Dist. LEXIS 130006, at * 16. The district court did not misconstrue the arbitration award and that award was not in manifest disregard of the law of copyright.

*Conclusion*

In light of the above discussion, we uphold the district court's confirmation of the arbitration award and grant of summary judgment to the Songwriters.

---

1. We deny the Songwriters' request for costs and fees. Although Folkways' appeal was not

successful, we disagree that it was patently frivolous.