**ARECA, INC., and Enrinel Investment Corp., Claimants and Petitioners,**

v.

**OPPENHEIMER & CO., INC. and Leonel R. Roche, Respondents,**

and

**OPPENHEIMER & CO., INC., Third Party Petitioner,**

v.

**PALLI HULTON & ASSOCIATES, Respondent.**

No. 96 Civ. 4068 (DC).

United States District Court, S.D. New York.

April 4, 1997.

Gusrae, Kaplan & Bruno by Martin H. Kaplan, Melvyn J. Falis, John E. Bersin, New York City, for Areca, Inc. and Enrinel Investment Corp.

Rosenman & Colin L.L.P. by Marshall H. Fishman, John D. Singer, New York City, for Oppenheimer & Co., Inc. and Leonel R. Roche.

## MEMORANDUM DECISION

CHIN, District Judge.

Petitioners Areca, Inc. ("Areca") and Enrinel Investment Corp. ("Enrinel") move to vacate or modify a March 4, 1996 arbitration award entered in favor of respondents Oppenheimer & Co., Inc. ("Oppenheimer") and Leonel R. Roche ("Roche"), the head of Oppenheimer's Commodity Department, dismissing petitioners' Statement of Claim in its entirety. Petitioners assert three grounds in support of vacatur: (1) the arbitration panel wrongfully refused to hear testimony from Antonio Fernandez ("Fernandez"), the Chief Financial Officer of Oppenheimer, in violation of 9 U.S.C. § 10(a)(3); (2) the arbitration panel demonstrated "evident partiality" in favor of the respondents, in violation of 9 U.S.C. § 10(a)(2); and (3) the arbitration panel dismissed petitioners' claims in "manifest disregard of the law." For the reasons set forth below, petitioners' motion is denied and the award is affirmed.

## FACTS

Petitioners Areca and Enrinel are Argentinean-based commodities and futures speculators who opened with Oppenheimer both a trading account, which petitioners traded by placing orders with their Argentinean agents Palli Hulton Associates ("PHA"), as well as a managed account, pursuant to which Roche selected independent commodities trading

advisors ("CTA's") who then traded the account.

In July 1993, petitioners commenced an arbitration before a "Member Panel" of the National Futures Association (the "NFA") [1] against respondents Oppenheimer and Roche, the account executive responsible for petitioners' commodities accounts at Oppenheimer. Petitioners alleged, *inter alia*, that respondents violated the Commodity Exchange Act ("CEA") and committed fraud by (1) conspiring with Juan Palli ("Palli"), a principal of petitioners' agent PHA, to churn petitioners' commodities futures accounts, (2) co-opting petitioners' agent PHA, and (3) making unauthorized transactions.

After petitioners presented their direct case, consisting of seven full hearing days in which they called seven fact witnesses and three expert witnesses, the arbitration panel dismissed all of petitioners' claims by an award dated March 4, 1996. It is this award that petitioners seek to vacate.

### *DISCUSSION*

#### A. *Judicial Review Of Arbitration Awards*

The Second Circuit has recently discussed the standard for a district court's review of arbitration awards:

> The showing required to avoid summary confirmation of an arbitration award is high, *Ottley v. Schwartzberg*, 819 F.2d 373, 376 (2d Cir.1987), and a party moving to vacate the award has the burden of proof, see generally *Matter of Andros Compania Maritima, S.A. of Kissavos (Marc Rich & Co. A.G.)*, 579 F.2d 691, 700 (2d Cir.1978); *Folkways Music Publishers v. Weiss*, 989 F.2d 108, 111 (2d Cir.1993). Moreover, "[a]rbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Folkways*

*Music*, 989 F.2d at 111. "[T]he court's function in confirming or vacating an arbitration award is severely limited." *Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp.*, 274 F.2d 805, 808 (2d Cir.1960).

*Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir.1997). With the limited nature of this Court's review of the arbitration award in mind, I turn to petitioners' specific bases for challenging the arbitration panel's dismissal of their claims.

#### B. *Refusal To Hear Evidence: 9 U.S.C. § 10(a)(3)*

Petitioners argue that the award must be set aside because of "misconduct" on the part of the arbitration panel. Specifically, petitioners allege that the arbitrators refused to allow them to present the testimony of Fernandez, the Chief Financial Officer of Oppenheimer, and that petitioners were prejudiced by such refusal.

Section 10(a)(3) of the Federal Arbitration Act, upon which claimants rely, provides in relevant part that the district court may issue an order vacating an arbitration award "[w]here the arbitrators were guilty of misconduct ... in refusing to hear evidence pertinent and material to the controversy." 9 U.S.C. § 10(a)(3). Thus, if the arbitrator refuses to hear pertinent and material evidence to the prejudice of one of the parties, the arbitration award may be set aside. *See Hoteles Condado Beach, La Concha and Convention Ctr. v. Union De Tronquistas Local 901*, 763 F.2d 34, 39–40 (1st Cir.1985); *Robbins v. Day*, 954 F.2d 679, 685 (11th Cir.), *cert. denied*, 506 U.S. 870, 113 S.Ct. 201, 121 L.Ed.2d 143 (1992); *Konkar Maritime Enters., S.A. v. Compagnie Belge D'Affretement*, 668 F.Supp. 267, 271 (S.D.N.Y.1987). However, "the misconduct must amount to a denial of fundamental fairness of the arbitration

1. Under the governing arbitration agreement, petitioners had the option of instituting an action before the CFTC, or an arbitration before the NFA, the New York Stock Exchange, the National Association of Securities Dealers, the American Arbitration Association or any other self-regulatory or private arbitration organization. The petitioners selected the NFA, and in their

demand for arbitration were required to select either a "Member Panel" ("consisting of impartial NFA members or individuals connected with NFA members") or a "Mixed Panel" ("consisting of a chairman and at least one other individual who are not connected with a NFA member or NFA"). Petitioners elected to proceed before a "Member Panel."

proceeding to warrant vacating the award." *Transit Cas. Co. v. Trenwick Reins. Co.*, 659 F.Supp. 1346, 1354 (S.D.N.Y.1987), *aff'd*, 841 F.2d 1117 (2d Cir.1988); *see also Bell Aerospace Co. Div. of Textron, Inc. v. Local 516, UAW*, 500 F.2d 921, 923 (2d Cir.1974); *Robbins*, 954 F.2d at 685; *Kaplan v. Alfred Dunhill of London, Inc.*, No. 96 Civ. 0258, 1996 WL 640901, *5 (S.D.N.Y. Nov. 4, 1996).

■ It is well settled that arbitrators are afforded broad discretion to determine whether to hear evidence. *Trade & Transport, Inc. v. Natural Petroleum Charterers Inc.*, 738 F.Supp. 789, 792 (S.D.N.Y.1990), *aff'd*, 931 F.2d 191 (2d Cir.1991). Under the Federal Arbitration Act, arbitration may proceed "with only a summary hearing and with restricted inquiry into factual issues." *Robbins*, 954 F.2d at 685. "(A)lthough arbitrators must have before them enough evidence to make an informed decision, they need not compromise the speed and efficiency that are the goals of arbitration by allowing the parties to present *every piece* of relevant evidence." *Brandt v. Brown & Co. Securities Corp.*, No. 94 Civ. 6640, 1995 WL 334381 (S.D.N.Y. June 5, 1995) (emphasis added); *accord, Robbins*, 954 F.2d at 685. Thus, arbitrators need not hear cumulative or irrelevant evidence. *See Robbins*, 954 F.2d at 685.

Here, petitioners were not denied a "fundamentally fair hearing" by the panel's refusal to allow the testimony of Fernandez. First, petitioners presented their direct case over seven full hearing days, in which they called ten witnesses, including four present and former Oppenheimer employees and three experts, and introduced over 148 exhibits into evidence. Notably, petitioner was given the latitude to call as witnesses Roche—the head of Oppenheimer's commodity operations, the supervisor of Oppenheimer's order desk, Oppenheimer's order clerks, Oppenheimer's compliance officer, and Roche's secretary. The scope of inquiry afforded petitioners was certainly sufficient to enable the arbitrators to make an informed decision and to provide petitioners a fundamentally fair hearing.

Second, although petitioners now claim it was "imperative" that Fernandez be examined, it is significant that petitioners did not even mention Fernandez in either their Statement of Claim or their opening statement at the hearing. Moreover, petitioners repeatedly failed to articulate what important testimony could be elicited from Fernandez, despite numerous opportunities to do so. For example, petitioners listed Fernandez as a witness in their hearing plan, but failed to provide the required summary of testimony. Despite two subsequent requests by respondents' counsel, petitioners declined to disclose the subject matter of his testimony.

By letter dated July 6, 1995, the panel stated that it would not allow testimony concerning Oppenheimer's alleged failure to supervise given the panel's earlier dismissal of that claim, and that the panel was "disinclined" to allow petitioners to call Fernandez to testify. Nonetheless, the panel allowed petitioners to move for reconsideration of its preliminary determination, which petitioners did on August 21, 1995, setting forth their view of the basis for compelling Fernandez's testimony. (*See* Fishman Aff. Ex. 25). Apparently finding the proffered bases unconvincing, the panel determined on September 8, 1995 to adhere to its earlier determination.

I also find petitioners' proffer inadequate. Petitioners concede that they had no actual contact with Fernandez. (Tr. 703–04). To the extent that Fernandez's name appears on various documents, each of the documents that petitioners proposed to question Fernandez on were stipulated to and received in evidence. Moreover, the Customer Agreement and the Addendum, the primary documents with respect to which petitioners desire to examine Fernandez, were discussed at length by Roche during his four days of testimony. (Tr. 1004–20; 1216–17). In addition, Roche testified at length regarding the set-up of petitioners' accounts, the management of those accounts, and the trading activity in those accounts. Testimony by Fernandez would have been either cumulative of other testimony or documentary evidence or simply irrelevant.

■ Petitioners' argument that the need to question Fernandez at the hearing arises in large part "from the structure of the

NFA arbitration system itself, which does not permit pre-hearing discovery, and thus precluded any deposition of Fernandez" (Pet.Br. at 21) is unpersuasive. The parties engaged in substantial prehearing discovery, including: (1) the mutual exchange of thousands of pages of documents; (2) the mutual propounding and answering of interrogatory-type questions; and (3) discovery-related motions practice, including the submission of motions to compel and motions to strike pleadings, each of which the panel ruled upon. (*See* Fishman Aff. ¶ 17 and Ex. 8). While it is true that no pre-hearing depositions were permitted, it is clear that arbitration proceedings are not constrained by formal rules of evidence or procedure. *Robbins,* 954 F.2d at 685 (citations omitted); *see also Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) ("Although those procedures might not be as extensive as in the federal courts, by agreeing to arbitrate, a party 'trades the procedures and opportunities for review of the courtroom for the simplicity, informality, and expedition of arbitration.' ") (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)). Accordingly, I find that it was well within the discretion of the arbitration panel to refuse to allow the testimony of Fernandez.

### C. *Evident Partiality: 9 U.S.C. § 10(a)(2)*

■ Petitioners also seek to vacate the award on the grounds that the panel "demonstrated a partiality in favor of a futures industry participant and a member of Oppenheimer's senior management which deprived the Claimants of the fundamental fairness required by due process." (Pet. Br. at 23–24). Petitioners cite the panel's limitation of evidence related to Oppenheimer's liability and its preclusion of Fernandez' testimony as evidence of its partiality, while conceding (Pet. Br. at 24) that there is no overt evidence of bias.

■ An arbitration award may be vacated when the arbitrator is guilty of "evident partiality." 9 U.S.C. § 10(a)(2). As explained by the Second Circuit:

"evident partiality" involves more than just the "appearance of bias." We do not, however, require proof of actual bias. Instead, we have held that "evident partiality" exists "where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration."

*Local 814, Int'l Bhd. of Teamsters v. J & B Systems Installers & Moving, Inc.,* 878 F.2d 38, 40 (2d Cir.1989) (per curiam) (quoting *Morelite Constr. Corp. v. New York City Dist. Council Carpenters Benefit Funds,* 748 F.2d 79, 84 (2d Cir.1984)). In reviewing claims of arbitral bias, courts consider various factors, including "the arbitrator's financial interest in the outcome, the nature of the relationship between the arbitrator and the allegedly favored party and whether the relationship existed during the arbitration." *Pompano–Windy City Partners, Ltd. v. Bear Stearns & Co., Inc.,* 794 F.Supp. 1265 (S.D.N.Y.1992) (citing *Sun Ref. & Mktg. Co. v. Statheros Shipping Corp. of Monrovia, Liberia* 761 F.Supp. 293, 299 (S.D.N.Y.), *aff'd,* 948 F.2d 1277 (2d Cir.1991)). However, "federal courts have concluded that evident partiality may not be shown by alleged procedural or evidentiary errors, by legitimate efforts to move the case along, or by failure to follow the rules of evidence." *Sisti v. Merrill, Lynch, Pierce, Fenner & Smith,* No. 91 00102–R, 1991 WL 575874, *3 (E.D. Va. April 22, 1991).

Petitioners claim that the arbitrators' refusal to hear testimony from Fernandez and to hear evidence related to Oppenheimer's liability can only be explained by the arbitrators' pro-industry bias. "Such speculation is clearly insufficient to warrant vacatur of the award." *Konkar Maritime Enterprises S.A.,* 668 F.Supp. at 275. Petitioners further claim that many of the participants in this arbitration knew one another, or knew of Fernandez's prominence in the futures industry, is of little moment. Petitioners chose to proceed before a Member Panel of the NFA when they could have chosen arbitration before a different body. It is precisely because of the trade-off between expertise and impartiality that the Second Circuit has adopted less stringent standards for disqualification of arbitrators than for federal judges. *See*

*Morelite,* 748 F.2d at 83. In sum, petitioners have failed to allege, the type of relationship between any arbitrator and the respondents necessary to satisfy the "evident partiality" standard.

██ Moreover, petitioners have waived any objection to the composition of the panel by their failure to object in a timely fashion. *Id.* at 84, n. 5. Petitioners were aware of the backgrounds and qualifications of the arbitrators, as well as the prominence of Fernandez in his field, before the panel dismissed their case, yet they did not complain until after the adverse award was issued.

Because they have not come forward with any direct and definite evidence of partiality, petitioners' motion to vacate on the grounds of evident partiality is denied.

### D. *Manifest Disregard Of The Law*

 A district court may vacate an arbitration award when the arbitrators acted in "manifest disregard of the law." *Merrill, Lynch, Pierce Fenner & Smith, Inc. v. Bobker,* 808 F.2d 930, 933 (2d Cir.1986) (" 'Manifest disregard of the law' by arbitrators is a judicially created ground for vacating their arbitration award."). The "manifest disregard" test requires "something beyond and different from mere error in the law or failure on the part of the arbitrators to understand or apply the law." *Siegel v. Titan Indus. Corp.,* 779 F.2d 891, 892 (2d Cir.1985) (per curiam) (internal quotations omitted). Rather, the party seeking vacatur bears the burden of showing that the "arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether." *Folkways Music Publishers, Inc. v. Weiss,* 989 F.2d 108, 111 (2d Cir.1993); *see also Bell Aerospace Co. Div. of Textron v. Local 516 (UAW),* 356 F.Supp. 354, 356 (W.D.N.Y. 1973), *rev'd on other grounds,* 500 F.2d 921 (2d Cir.1974); *Merrill Lynch,* 808 F.2d at 934.

██ "Where the arbitrators have failed to document the reasoning behind their decision—a perfectly acceptable practice in arbitration—courts must consider the facts and the law to determine whether the allegedly disregarded law was clearly applicable and

ignored." *Colonial Penn Ins. Co. v. American Centennial Ins. Co.,* No. 96 Civ. 6051, 1997 WL 10004 (S.D.N.Y. Jan. 10, 1997) (citing *Folkways Music Publishers,* 989 F.2d at 112). If there is "even a barely colorable justification for the outcome reached," the court must confirm the arbitration award. *Andros Compania Maritima, S.A.,* 579 F.2d at 704; *Siegel,* 779 F.2d at 894 ("Where a 'ground for the arbitrator's decision can be inferred from the facts of the case, the award should be confirmed.' " (citation omitted)).

I have reviewed the arguments of the parties on this motion, as well as the arguments submitted to the arbitration panel on the two motions to dismiss the Statement of Claim, and I find that there was more than a colorable basis for the dismissal of petitioners' Statement of Claim. Petitioners have failed to carry their burden of demonstrating that the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether.

Petitioners' arguments, at best, amount to disagreements with the arbitration panel's view of the evidence in this case. The arbitration panel, however, as trier of fact, was entitled to make factual findings and credibility determinations, and this Court is not empowered to review those findings.

### CONCLUSION

For the foregoing reasons, petitioners' motion to vacate the arbitration award is denied and the award is affirmed. The Clerk of the Court shall enter judgment in favor of respondents, with prejudice and with costs.

SO ORDERED.