Mary Terese CAMPBELL, Petitioner,

v.

CANTOR FITZGERALD & CO., INC., et al., Respondents.

No. 98 Civ. 3973 (DC).

United States District Court, S.D. New York.

Sept. 24, 1998.

Order Denying Reconsideration, Oct. 20, 1998.

Murphy & O'Connell by Patrick J. Murphy, New York City, for Petitioner.

Wilson, Elser, Moskowitz, Edelman & Dicker LLP by Fred N. Knopf, New York City, for Respondents.

## MEMORANDUM DECISION

CHIN, District Judge.

In this case, Mary Terese Campbell ("Campbell") petitions the Court to vacate an arbitration award rendered by a three-member National Association of Securities Dealers ("NASD") panel on March 5, 1998. Respondents oppose the petition. For the following reasons, the petition to vacate is denied and the arbitration award is confirmed. In addition, the separate suit filed by petitioner pending before the Court, *Campbell v. Cantor Fitzgerald & Co., Inc.*, *et al.*, No. 98 Civ. 4547(DC), is dismissed with prejudice.

## BACKGROUND

Campbell was employed by respondent Cantor Fitzgerald & Co., Inc. ("Cantor Fitzgerald") as an institutional sales person from October 19, 1987 until March 25, 1992, when she was discharged. (Resp. Mem. at 3). On April 20, 1992, Cantor Fitzgerald filed with the NASD a Form U–5, a termination notice that stock brokerages must file with the NASD when the employment of certain employees is terminated, reporting that Campbell had been "[d]ischarged" for "FAILURE TO FOLLOW FIRM PROCEDURES." (Knopf Aff. Ex. A).

On March 25, 1995, Campbell initiated an arbitration proceeding against respondents before the NASD. Campbell alleged that she was wrongfully discharged and that she was defamed by the notation on her Form U–5. After initiating arbitration, Campbell amended her claim.[1] Shortly thereafter, respon-

---

1. Campbell amended her statement of claim on June 26, 1996. After she rested and respondents renewed their motion to dismiss, Campbell sought leave to amend her complaint a third

time. The panel converted Campbell's motion to amend her second complaint to a motion to conform the pleadings to the proof, and, only as

dents moved to dismiss it. (Resp. Mem. at 6). The arbitration panel reserved decision on the motion and Campbell was permitted to present her case to the panel. What follows is a brief synopsis of the parties' accounts of the events precipitating the termination of Campbell's employment.

Until 1991, both Campbell and her husband worked at Cantor Fitzgerald. (Pet. ¶¶ 1–3). In January 1991, Campbell's husband learned of a U.S. Treasury notification concerning certain restrictions on agreements to sell or dispose of U.S. Treasury securities. (Id. ¶ 5). Campbell's husband repeatedly brought what he believed were violations of the notice to the attention of Cantor Fitzgerald's chairman and chief executive officer, who allegedly ignored him. (Id. ¶ 8). Because Cantor Fitzgerald purportedly refused to comply with the procedures, Campbell's husband "felt compelled to resign" and did so in June 1991. (Id. ¶¶ 10–13).

Later that year, the Securities & Exchange Commission (the "SEC") initiated an investigation of Cantor Fitzgerald's handling of the auction trading of U.S. Treasury issues. (Id. ¶ 16–17). Shortly after an article appeared in the Wall Street Journal about the SEC investigation on March 11, 1992, Campbell was informed that she had been placed on "administrative leave" and should not report to work again until further notice was given. (Id. ¶¶ 18–19). Campbell's employment was then terminated at a March 25, 1992 meeting during which she was accused of violating firm procedures because she had allegedly disclosed confidential information and undercharged Chase Securities, where her husband then worked. (Id. ¶ 20).

Respondents claimed that Campbell's allegation of wrongful termination was a tactic to obscure her own violations of firm procedures. (Resp. Mem. at 3–4). Respondents maintained that Campbell's employment was terminated for cause because she disclosed proprietary and confidential customer information to Chase, the disclosure of which was transcribed in a telephone conversation between Campbell and her husband on August 21, 1991. In addition, Campbell purportedly undercharged commissions to a Chase customer account managed by her husband. (Id. at 4). Respondents analyzed Campbell's Chase cash trades from July 1991 to March 1992 (the "Ramos Report") and concluded that she charged commissions totalling only $3,928.64 on trades involving $505 million of U.S. Government securities when the commissions should have been $13,882.52. (Id.). Campbell maintains that the Ramos Report was flawed and that respondents fabricated the reasons for the termination of her employment.

Campbell's hearings before the NASD began in April 1996 and concluded in August 1997. (Pet.Mem.¶ 7). The panel conducted thirty hearing sessions that generated 2200 pages of testimony. (Pet. Ex. A; Resp. Mem. at 7). The panel heard the testimony of four fact witnesses and one expert witness, and received 24 exhibits. (Resp. Mem. at 7). Testimony and documents concerning the SEC investigation of Cantor Fitzgerald was also allowed into evidence and considered by the panel despite respondents' contention that such evidence was irrelevant. (Id. at 18).

When Campbell rested, respondents renewed their motion to dismiss. The panel issued its award on March 5, 1998 granting respondent's motion to dismiss as to the "wrongful termination and all other claims sounding in wrongful termination" because Campbell was an at-will employee whose employment could be terminated for any or no reason. (Pet.Ex. A). As to Campbell's other claims, including her defamation claim, the panel held that she "failed to sustain her burden of proof." (Id.). The panel also assessed fees in the amount of $45,000 ($1,500 for each of 30 hearing sessions) against Campbell pursuant to Rule 10205(c) of the Code of Arbitration Procedure. (Id.).

This petition followed.

## DISCUSSION

### A. Judicial Review of Arbitration Awards

"The party seeking to vacate or modify an arbitration award bears the bur-

so converted, granted the motion. (Resp. Mem. at 7; Pet. Ex. A).

den of proof, and the showing required of that party in order to avoid summary affirmance of the award is high." *DeGaetano v. Smith Barney, Inc.*, 983 F.Supp. 459, 461 (S.D.N.Y.1997) (citation omitted); *see also Ottley v. Schwartzberg*, 819 F.2d 373, 376 (2d Cir.1987); *Folkways Music Publishers v. Weiss*, 989 F.2d 108, 111 (2d Cir.1993). Arbitration awards are subject to "very limited review" to avoid undermining the goals of arbitration, namely, settling disputes efficiently and avoiding lengthy and expensive litigation. *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir.1997) (quoting *Folkways Music*, 989 F.2d at 111). "[T]he court's function in confirming or vacating an arbitration award is severely limited." *Areca, Inc. et al. v. Oppenheimer & Co., Inc. et al.*, 960 F.Supp. 52 (S.D.N.Y.1997) (quoting *Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp.*, 274 F.2d 805, 808 (2d Cir.), *cert. denied*, 363 U.S. 843, 80 S.Ct. 1612, 4 L.Ed.2d 1727 (1960)).

■ The Federal Arbitration Act (the "FAA") provides that an award may be vacated if: (1) the award was procured by corruption, fraud or undue means; (2) the arbitrators exhibited "evident partiality" or "corruption"; (3) the arbitrators were guilty of misconduct; or (4) the arbitrators exceeded their power. *See generally* 9 U.S.C. § 10(a); *Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197, 202 n. 3 (2d Cir.1998). Misconduct warranting vacatur pursuant to Section 10(a) of the FAA must be serious; it "must amount to a denial of fundamental fairness of the arbitration proceeding." *Areca*, 960 F.Supp. at 54–55 (citations omitted). To prove evident partiality of the arbitration panel, a party must demonstrate "more than just the 'appearance of bias.'" *Id.* at 56 (citations omitted). In fact, evident partiality "may not be shown by alleged procedural or evidentiary errors, by legitimate efforts to move the case along, or by failure to follow the rules of evidence." *Id.* (citations omitted).

■ In addition to the statutory grounds for vacatur, the Second Circuit also recognizes that an arbitration award may be vacated if it is in "manifest disregard of the law." *Halligan*, 148 F.3d at 201–02; *Wilko v. Swan*, 346 U.S. 427, 436–37, 74 S.Ct. 182, 98 L.Ed. 168 (1953). The "manifest disregard" test is rigorous. It requires "something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law." *Siegel v. Titan Indus. Corp.*, 779 F.2d 891, 892 (2d Cir.1985) (quoted in *Willemijn*, 103 F.3d at 12). To modify or vacate an award on this ground, a court must find that: "(1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." *Halligan*, 148 F.3d at 202 (citing *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 821 (2d Cir.1997), *cert. denied*, — U.S. ——, 118 S.Ct. 695, 139 L.Ed.2d 639 (1998)).

## B. *Petitioner's Claims*

Campbell asserts that the arbitration award should be vacated principally because: (1) it is in manifest disregard of the law and was arbitrary and capricious; (2) the arbitrators were biased, engaged in misconduct, and ruled in excess of their power; (3) the award violates Campbell's right to due process; and (4) it violates public policy in assessing her forum fees. (Pet. ¶ 63; *see also* Pet. Mem. at 3–4).

I address Campbell's claims in turn.

### 1. *Manifest Disregard of Law; Arbitrariness & Capriciousness*

■ Campbell alleges that the arbitration award in this case was made in manifest disregard of the law because she proved that the respondents published and republished false and defamatory documents about her; her evidence was incontrovertible; the arbitrators disregarded the incontrovertible evidence; and the arbitrators disregarded the law presented and explained at the hearings. She also alleges that the arbitrators' ruling that she failed to sustain her burden of proof "arbitrarily and capriciously constitute[s] manifest disregard of the law." (Pet. Mem. at 3).

To support these allegations, Campbell relies on the facts surrounding her claim and what she maintains she proved during the arbitration hearings. In addition, Campbell relies on a recent Second Circuit decision in which the court vacated an arbitration award as being in manifest disregard of the law. *See Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197 (2d Cir.1998). Because Campbell places so much emphasis on the *Halligan* decision (*see* Pet. Mem. at ¶¶ 2, 12–24, 33, 35, 37, 38, 48–49, 51; Pet. Reply at ¶¶ 1–2, 4, 6, 9, 13, 15–19), I briefly discuss its facts and the Second Circuit's holding in the case.

The petitioner in *Halligan* claimed that his employment was terminated in violation of the Age Discrimination in Employment Act (the "ADEA"). After extensive hearings, the arbitrators rendered a written award that set forth the parties' claims and defenses and denied relief to the petitioner. The award did not, however, contain any explanation or rationale for the result. The award was confirmed by the district court but the Second Circuit reversed.

Acknowledging that there is "strong judicial support" for arbitration, the Second Circuit pointed out, nevertheless, that there is increasing controversy over the enforceability of "mandatory pre-dispute arbitration agreements" in the context of "statutory claims of employment discrimination." *Halligan*, 148 F.3d at 201. The Second Circuit did not reach the issue, however, because it concluded that the arbitrators' decision in that case was rendered in manifest disregard of the law and facts. First, in view of the *strong evidence* that Halligan was fired because of his age, the court noted that it was "inclined to hold that [the arbitrators] ignored the law or the evidence or both." *Id.* at 204. Second, the court noted that its initial view was strengthened by the fact that the panel in this case did not explain its award.

The Second Circuit made clear, however, that it was "not holding that arbitrators should write opinions in every case or even in most cases." *Id.* Rather, *Halligan* stands for the proposition that where a court is inclined to find a manifest disregard of the law on the part of arbitrators, the court can take into account the arbitrators' failure to explain their decision. In essence, the court can infer from the absence of an explanation that the panel did not have a reasonable explanation for its award.

The instant case highlights some of the problems that exist with respect to mandatory arbitration of employment disputes. Although arbitration in theory is supposed to be faster, more efficient, and less expensive than litigation, the parties here were required to participate in thirty hearing sessions, spread out over sixteen months. The arbitrators ruled against Campbell, but did not explain their reasoning. The arbitrators then assessed Campbell $45,000 in hearing fees. Campbell's frustration is understandable.

Nonetheless, *Halligan* is distinguishable from the instant case because Campbell simply has not demonstrated any manifest disregard of the law or "arbitrary and capricious behavior" that would justify vacating the arbitration award. In *Halligan*, the evidence of discrimination was extremely strong; the arbitrators were apprised of the correct legal principles; and thus the Second Circuit concluded that the arbitrators must have manifestly disregarded the law. Here, Campbell has not demonstrated that she presented strong evidence to support her claims in the arbitration proceedings. In fact, Campbell failed to provide the Court even with transcripts of the arbitration proceedings.

Even though the arbitrators did not explain the reasoning behind their decision, I am not persuaded that the applicable law in this case was ignored. *Colonial Penn Ins. Co. v. American Centennial Ins. Co.*, No. 96 Civ. 6051, 1997 WL 10004 (S.D.N.Y. Jan. 10, 1997) (citation omitted), *aff'd*, 133 F.3d 906 (2d Cir.1997); *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 821 (2d Cir. 1997). Indeed, Campbell never identifies any principle of law that the panel purportedly failed to follow. Rather, her approach is a factual one that focuses on the credibility of the evidence presented, which is not a proper basis upon which to vacate the award at issue.

Moreover, the arbitrators' reasoning in this case can certainly be inferred from the facts: Campbell was an at-will employee whose employment could be terminated for any non-discriminatory reason or for no reason at all;[2] her employer terminated her employment purportedly because she failed to follow firm procedures; the employer's decision was supported by, among other things, a tape recording of a conversation during which Campbell purportedly improperly disclosed confidential information and a report showing that Campbell had purportedly undercharged commissions; and, the reason for the termination of her employment was documented as required on a Form U-5. Under New York law, Campbell had no claim for wrongful termination, and the arbitrators rejected the defamation claim because they were not persuaded that Campbell had proven that the reported reasons for the discharge were false and defamatory. In addition, certain of Campbell's claims would appear to have been barred by the one-year statute of limitations for intentional torts.

Accordingly, the motion to vacate on the grounds of manifest disregard of the law and/or arbitrary and capricious behavior is denied.

### 2. Evident Partiality & Misconduct

Campbell alleges that the arbitrators showed "evident partiality and misconduct during the hearings" because they disregarded the law and the evidence presented. (Pet. Mem. at 3). She provides no proof, however, to support this allegation and offers instead only conclusory statements as to her view of what the evidence that she presented proved. Campbell has simply not come forward with any evidence of misconduct or partiality by the arbitrators except for the fact that the arbitrators ruled against her. Indeed,

---

2. Excerpts of the proceedings provided by respondents show that Campbell testified as follows:

> I acknowledge that Cantor Fitzgerald certainly had the power to fire me, but I don't think any employer has the right to be abusive or to be unfair or to treat any employee different than the custom and practice of the firm.

(Tr. 2272). In fact, Cantor Fitzgerald was not legally required to treat Campbell fairly or consistently with any purported custom or practice.

---

Campbell did not complain about the arbitrators or their conduct in this matter until after the adverse award was issued.

Accordingly, the motion to vacate on the grounds of evident partiality and/or misconduct is denied.

### 3. Due Process

■ Campbell also argues that the "panel's manifest disregard of the law and facts violates [her] right to due process." (Pet. Mem. at 13). As already discussed, Campbell has not met her burden of proving any manifest disregard of the law. In any event, I also hold that there was no violation of her due process rights. The mandatory arbitration to which Campbell was required to agree pursuant to the Form U-4 did not violate Campbell's constitutional due process and does not violate public policy. There is nothing in the record before me to demonstrate that fundamental fairness was violated in this case. The arbitration proceedings were conducted in accordance with NASD arbitration procedures, and it appears that Campbell was afforded a complete opportunity to present her case to the arbitration panel.

Accordingly, the motion to vacate on due process grounds is denied.

### 4. Forum Fees

■ The arbitration panel in this case, relying upon a specific NASD Rule,[3] assessed Campbell $45,000 in forum fees. Campbell contends that the assessment of forum fees against her violates public policy.

Campbell raises a serious issue: whether an employee who is required, as a condition of employment, to agree to the mandatory arbitration of employment disputes must pay for all or part of the arbitrators' fees when a dispute is submitted for arbitration. Indeed,

---

It was prohibited only from treating Campbell differently because of an unlawful, discriminatory reason. Campbell has not alleged any such discrimination.

3. NASD Rule 10205(c) states in relevant part: "The arbitrators in their award, shall determine the amount chargeable to the parties as forum fees and shall determine who shall pay such forum fees."

some courts have held, in the context of statutory discrimination claims, that employees cannot be required to pay such fees when employers insist that employees agree to mandatory arbitration. *See, e.g., Cole v. Burns Int'l Security Servs.,* 105 F.3d 1465, 1468 (D.C.Cir.1997) (holding in Title VII case that an employer may not require an employee to arbitrate all disputes against it *and* also require the employee to pay all or part of the arbitrators' fees); *Martens v. Smith Barney, Inc.,* 181 F.R.D. 243, 255–56, No. 96 Civ. 3779, 1998 WL 344802 (S.D.N.Y.1998) (holding in Title VII case that an arbitration agreement "cannot impose financial burdens on plaintiff access to the arbitral forum").

I do not reach the issue in this case, however, for Campbell has not properly presented it. There is nothing in the record to suggest that Campbell submitted her claims for arbitration involuntarily. She initiated the arbitration proceedings by filing a Statement of Claim with the NASD and paying a $1,500 deposit. Although the parties have not submitted a complete record to the Court, the Court has been provided with copies of certain of Campbell's submissions to the arbitration panel, and none of these submissions contains any indication that Campbell objected to proceeding via arbitration rather than by litigation. Indeed, Campbell's Second Amended Statement of Claim begins by stating: "Claimant, Mary Terese Campbell, by her attorneys, . . . hereby submits the following claims in controversy to Arbitration, in accordance with the Constitution, Rules and Regulations of the National Association of Securities Dealers, Inc." The Second Amended Statement of Claim makes no mention of the Form U–4 and sets forth no objection to proceeding by arbitration. Nor has Campbell even alleged, by affidavit or otherwise, that she commenced the arbitration proceedings involuntarily.[4] Indeed, the record contains no indication that Campbell had any objection to the enforceability of the arbitration clause or to proceeding via arbitration rather than litiga-

tion until *after* the arbitrators ruled against her.

On this record, I can only conclude that Campbell commenced the arbitration proceedings voluntarily, without objection, and that she therefore is bound by the arbitrators' award.

Accordingly, the motion to vacate on the ground that the assessment of forum fees violates public policy is, in the particular circumstances of this case, denied.

### C. *Petitioner's Related Lawsuit*

On June 26, 1998, Campbell filed a separate lawsuit, *Campbell v. Cantor Fitzgerald & Co., Inc. et al.,* No. 98 Civ. 4547(DC), against the same parties involved in the arbitration proceeding. This suit alleges the following four causes of action: (1) defamation; (2) intentional infliction of emotional distress; (3) injurious falsehood; and (4) making false statements to injure plaintiff. (Compl.¶¶ 45–58). The complaint in this separate suit is based on precisely the same underlying facts as Campbell's claims in arbitration. Indeed, aside from minor variations, paragraphs 6–38 of the complaint are literally identical to paragraphs 1–34 of Campbell's petition to vacate. Because I am denying Campbell's petition to vacate and confirming the arbitration award, the complaint in case No. 98 Civ. 4547(DC) is dismissed with prejudice as barred by res judicata.

### CONCLUSION

For the reasons stated herein, the petition to vacate is denied and the arbitration award at issue is hereby confirmed. The Court also hereby dismisses with prejudice the case *Campbell v. Cantor Fitzgerald & Co., Inc., et al.,* No. 98 Civ. 4547(DC). The Clerk of the Court shall enter judgment accordingly.

SO ORDERED.

### *MEMORANDUM DECISION*

Petitioner Mary Terese Campbell moves pursuant to Fed.R.Civ.P. 59 to vacate the

---

4. The only reference in the record to the reason why Campbell proceeded by arbitration rather than by litigation is the representation in her memorandum of law filed in this Court that she and respondents are "covered parties pursuant to Title 15 U.S.C., mandatorily required to arbitrate disputes pursuant to a Form U–4 filed with the NASD." (Pet.Mem.¶ 4).

judgment entered herein on the grounds that my Memorandum Decision dated September 24, 1998 was based on "(1) manifest errors (a) of fact and (b) of law and (2) should be altered to prevent manifest injustice." For the reasons set forth in the Memorandum Decision, the motion to vacate is denied. I add only the following:

1. Petitioner now contends that her original motion to vacate the arbitration award was "predicated entirely" on her defamation claim and that this Court erred by treating petitioner's claim solely as an "employment claim." (Pet. Rule 59 Mem. at 2–3). These contentions are rejected. First, petitioner simply did not make it clear in her amended petition or other submissions that she was abandoning her wrongful termination claim and proceeding exclusively on her defamation claim. Indeed, she moved to vacate the entire award, not just part of it. ˙ Hence, I decided petitioner's original motion to vacate the arbitration award on the assumption that she was still pursuing a wrongful termination claim—as *one* of her claims. Second, however, I also understood that petitioner was relying, at least in part, on a defamation claim, and I decided the motion with the understanding that petitioner was pursuing a defamation claim. *See* Mem. Dec. at 2, 10–11. Hence, petitioner is incorrect in suggesting that the Court did not consider the merits of her defamation claim.

2. In my Memorandum Decision, I wrote that "Campbell failed to provide the Court even with the transcripts of the arbitration proceedings." Mem. Dec. at 10. Petitioner contends that the Court "declined to accept the transcripts" that she subpoenaed from the NASD and shipped to the Court. (*See* Pet. Rule 59 Mem. at 7; Pet. Reply at 6). While I do not recall the circumstances surrounding the delivery of the transcripts, I would surmise that, even assuming my Chambers did decline the transcripts, my staff did so because it is not proper procedure for a party to subpoena thousands of pages of documents directly to Chambers without the Court's permission.

In any event, petitioner thereafter had an opportunity to submit the transcripts. On June 19, 1998, I held a conference in the case. Although petitioner contends that at the conference the Court "indicated . . . that it did not wish the record to be produced" (Pet. Reply Mem. at 6), in fact—as my notes of the conference confirm—I instructed "[petitioner] to submit m/1 [memorandum of law] and anything else that she wants to be part of the record by 7/13/98." Accordingly, I directed petitioner to submit a memorandum of law and "anything else" that she wanted to be part of the record by July 13, 1998, and petitioner could have submitted the transcripts and any exhibits then.

Even assuming, however, for argument's sake that the Court did seek to dissuade petitioner from submitting the transcripts, the result in this case would be no different. Indeed, I decided the motion only after carefully considering the arguments advanced by petitioner, including her representations as to the evidence produced during the arbitration proceedings. As I originally noted, petitioner's challenge is to the weight and credibility of the evidence, and she has not met her burden of proving manifest disregard of the law or facts. In essence, she attempts in this motion, as in her original motion, to retry her case.

For example, petitioner concedes that respondents offered the "Ramos Report" to support their contention that she failed to follow firm procedures. Petitioner merely takes the position that the Ramos Report is not to be believed. (Pet. Rule 59 Mem. at 3–4, 6–9). In addition, petitioner concedes that respondents offered a transcript of a telephone call.[1] Again, what petitioner attacks is the legitimacy and accuracy of that transcript. (*Id.* at 4, 8). Finally, petitioner argues that respondents Lutnick and Needleman testified untruthfully and in a manner that contradicted other evidence before the arbitration panel. (*See, e.g.,* Pet. Mem. at 9–10, 11).

Hence, petitioner cannot deny that respondents submitted evidence to contradict her

---

**1.** The Memorandum Decision refers to a "tape recording" of a conversation. Mem. Dec. at 11. Apparently, a transcript of that conversation, not the tape itself, was admitted in evidence at the proceeding.

defamation claim, as they presented evidence to explain their reasons for terminating her employment and filling out the Form U–5 accordingly. Rather, she attacks the truthfulness of that evidence and the credibility of respondents' testimony. Even assuming that she presented evidence to support her defamation claim, it was up to the arbitrators to make factual findings, weigh the evidence, resolve evidentiary conflicts, and assess the credibility of witnesses. *See International Bhd. of Elec. Workers v. Niagara Mohawk Power Corp.*, 143 F.3d 704, 706 & 725–26 (2d Cir.1998) (holding that arbitrators' fact-finding cannot be reviewed *de novo* by district court); *Chisolm v. Kidder, Peabody Asset Management, Inc.*, 966 F.Supp. 218, 229 (S.D.N.Y.1997) ("it is not the function of this court to reweigh the evidence, but only to determine whether, in reaching their decision, the arbitrators manifestly disregarded the law"), *aff'd*, No. 97–7828, 1998 WL 695041 (2d Cir. July 28, 1998) (citing *Halligan v. Piper Jaffray*, 148 F.3d 197 (2d Cir. 1998), but holding that there was evidence from which to conclude that petitioner failed to prove his claim); *Areca, Inc. v. Oppenheimer & Co.*, 960 F.Supp. 52, 57 (S.D.N.Y. 1997) (court is not empowered to review arbitrators' factual findings and credibility determinations); *St. Lawrence Explosives Corp. v. Worthy Brothers Pipeline Corp.*, 916 F.Supp. 187, 193 (N.D.N.Y.1996) (holding that if "a ground for the arbitrator's decision can be inferred from the facts of the case, the award should be confirmed").

Petitioner does correctly point out that in *Halligan v. Piper Jaffray*, 148 F.3d 197, 203 (2d Cir.1998), the Second Circuit held that there was a manifest disregard of the law and facts in the case as there was "overwhelming evidence" of discrimination presented by the petitioner. *Halligan* does not stand for the proposition, however, that district courts may reweigh the evidence and second-guess the arbitrators' credibility determinations. Rather, *Halligan* holds that an arbitration award may be set aside if it is in *manifest* disregard of the law or facts.

Here, petitioner urged the arbitrators to reject as unbelievable the Ramos report, the transcript of the telephone conversation, and the testimony of Lutnick and Needleman. The arbitrators were not persuaded, and thus there clearly existed an ample basis from which the arbitrators could conclude that the information on petitioner's Form U–5 was not false. Resolving the conflicts in the evidence in respondents' favor, the arbitrators found that petitioner simply did not meet her burden of proof as to her defamation claim. Clearly, there is at least a "colorable justification for the outcome reached" by the arbitration panel and, accordingly, the arbitration award must be confirmed. *Brotman v. Sant Cassia Investment Management*, No. 96 Civ. 6727, 1997 WL 401671, at *3 (S.D.N.Y. Jul.16, 1997).

3. Petitioner contends that the Court adopted "a misbegotten view of reality" by finding that petitioner "participated in the arbitration voluntarily." (Pet. Rule 59 Mem. at 9 (citing Mem. Dec. at 14)). This contention lacks merit.

The Court did not find that Campbell participated in the arbitration voluntarily. Rather, the Court found that there was nothing in the record to suggest that petitioner submitted her claims to arbitration *in*voluntarily. Had petitioner actually submitted her claims for arbitration involuntarily, she could have, and should have: (1) objected to arbitration, by noting her objection either in her statement of claim or elsewhere; (2) reserved her right to bring a court action, by reserving that right either in her statement of claim or elsewhere; or (3) commenced a lawsuit, leaving respondents to move to compel arbitration. Petitioner did none of these things. Instead, she filed a claim with the NASD and did so without objecting or reserving her rights. Moreover, at no time—either during the arbitration or during the proceedings in this Court—has Campbell submitted a sworn statement or any other evidentiary material representing that she commenced the arbitration proceedings involuntarily.

4. The Court has considered petitioner's other arguments on the Rule 59 motion and rejects them.

## CONCLUSION

Petitioner's Rule 59 motion is denied.

SO ORDERED.