OPINION OF THE COURT
Sandra J. Feuerstein, J.
Plaintiff is the holder of 500 shares of 55 Ehrbar Tenants Corporation, a cooperative housing corporation (the Co-op) and is the lessee under a long-term proprietary lease (Lease) for apartment GA, from the lessor Co-op. Plaintiff acquired the shares and lease in June 1991 and sublet the apartment on or about March 15, 1992. Ownership of the shares is evidenced by a stock certificate, numbered 133, in plaintiff’s name dated June 19, 1991.
Upon the initial sublet of apartment GA, the plaintiff paid to the defendant Co-op a $1,000 "sublet fee” in accord with the Co-op’s "Resale and Sublease Procedures,” adopted, according to the Co-op, in 1989. Defendant contends that this is an annual fee and that the plaintiff is in default of the Lease based on his failure to pay the sublet fee in 1993 and 1994.
According to the defendant Co-op, it served a "Notice to Cure Defaults” upon the plaintiff on October 18, 1994. Plaintiff contends that the notice was neither served upon, nor received by him. The alleged receipt for certified mail by which the Co-op contends service of the notice was made is unstamped and otherwise undated.
It is not disputed that plaintiff did receive a "Notice of Termination for Breach of Covenant” served by certified mail dated February 7, 1995 and that on August 23, 1995 plaintiff received a second "Notice of Termination for Breach of Covenant” threatening to terminate his tenancy and foreclose on the Co-op’s lien on his shares based upon plaintiff’s failure to pay a $2,000 "yearly sub-let fee for 1993 and 1994” under paragraphs 15 and 31 (c) of the proprietary Lease. In addition, the notices allege plaintiff’s failure to pay "attorneys fees *908 incurred by the landlord in enforcing your obligations under the Proprietary Lease” pursuant to paragraph 28. The notices demand the surrender of certificate No. 56. They do not refer to the "Notice to Cure Defaults” allegedly served the previous October.
The sole difference between the two notices of termination are their effective dates: the notice received in February states that "[t]he effective date of this termination shall be February 28, 1995,” while the notice received in August states that the effective date of termination is September 28, 1995.
It is also undisputed that defendant Co-op accepted maintenance payments from the plaintiff for the period between February 7, 1995 and August 23, 1995 and that it did not serve a second "Notice to Cure Defaults” prior to the August notice of termination.
Plaintiff has commenced a lawsuit seeking a declaratory judgment that there has been no default which would permit a termination of the lease, and that the sublet fee is invalid. He also seeks $1,000 in damages representing the sublet fee he paid in 1992 and a permanent injunction of any proceedings by defendant to enforce its rights based on his alleged default.
Initially, it is noted that defendant Co-op’s reliance upon plaintiff’s failure to secure a ”Yellowstone” injunction is misplaced. It is the contention of defendant Co-op that since plaintiff did not seek an injunction prior to the expiration of the 30-day cure period of which it claims to have given notice by certified mail on October 18, 1994, this court lacks jurisdiction to entertain plaintiff’s application. ”Yellowstone injunctions became commonplace following our decision in First Nat. Stores v Yellowstone Shopping Center (21 NY2d 630). That appeal involved a controversy between a landlord and a commercial tenant over which of them was required to bear the expense of a sprinkler system required by government orders. The landlord, contending that the cost properly belonged to the tenant, implemented provisions in the lease which provided that if the tenant did not cure a breach within 10 days the tenancy could be terminated. The tenant instituted legal proceedings but failed to obtain a temporary restraining order. Long before the dispute was legally resolved, the lease terminated because of the tenant’s failure to cure or to toll the cure period. We held that under such circumstances the courts were powerless to revive the expired lease. As a result, tenants developed the practice of obtaining a stay of the cure period before it expired to preserve the lease until the merits of the *909 dispute could be settled in court. The alternative for the tenant was to stand on his rights without correcting the violation, wait for the landlord to start summary proceedings in Civil Court and then defend against the landlord’s claim in that court. If he won, well and good; if he lost he forfeited everything because the lease had terminated. The remedy for this all or nothing result was to obtain a stay to toll the running of the cure period and the expiration of the lease * * * Once the merits had been decided by Supreme Court the stay terminated. If the tenant prevailed he had no further need for a stay. If he lost, he either cured the default during whatever part of the cure period remained or the lease expired and he was subject to removal by summary proceeding.” (Post v 120 E. End Ave. Corp., 62 NY2d 19, 24-25.)
Therefore, defendant’s argument that Yellowstone creates a provisional remedy Statute of Limitations is incorrect and plaintiff’s failure to secure an immediate injunction during the cure period, while perhaps risky, does not divest this court of jurisdiction to enjoin termination of the lease, or otherwise consider the relief sought by plaintiff.
In considering the application for a preliminary injunction, the burden is upon the movant to demonstrate the probability of success upon the merits, the danger of irreparable injury if the injunction is not granted and that the equities are in his favor (Aetna Ins. Co. v Capasso, 75 NY2d 860). Here, the plaintiff has met his burden of demonstrating irreparable harm and that the equities are in his favor by the threat of foreclosure of his share interest as well as the need to maintain the status quo (Sou Thi Ma v Lien, 198 AD2d 186, Iv dismissed 83 NY2d 847). He has, however, also demonstrated his entitlement to permanently enjoin the defendant from taking any steps to enforce its rights under the Lease based upon the defendant’s failure to comply with the notice provisions of the proprietary Lease.
Article 31 of the Lease provides for a termination of the Lease on five days’ notice following service of a written notice of default and a 30-day cure period.
While, as noted above, there is a question as to whether the "Notice to Cure” was in fact ever served in October 1994, it is undisputed that no subsequent cure notice was served following the February 1995 notice of termination. It is also undisputed that defendant received and accepted monthly maintenance payments following the service of the February notice and the expiration of the date of termination contained in that notice.
*910 Thus, despite a "non-waiver” clause in the proprietary Lease (TSS-Seedman’s, Inc. v Elota Realty Co., 72 NY2d 1024; Atkins Waste Materials v May, 34 NY2d 422; Lee v Wright, 108 AD2d 678), the landlord clearly abandoned its right to proceed to termination of the Lease and waived the claimed default by the receipt and retention of the monthly payments and by failing to proceed after the noticed date of termination. The fact that defendant Co-op served a second notice of termination in August 1995 with a different termination date further demonstrates defendant’s intent to waive its rights under the Lease by the acceptance of rent for the period from February to August 1995. Having reasonably relied upon the actions of the landlord as evidenced by its waiver, plaintiff was entitled to a second notice and an opportunity to cure any default before service of the August termination notice.
Moreover, the termination notice itself, referring to share certificate No. 56, contains a substantial defect in that it threatens foreclosure and demands production of a certificate of shares which does not represent the shares held by plaintiff.
Therefore, based upon defendant Co-op’s failure to provide a notice to cure prior to the August 1995 "Notice of Termination” and its failure to properly identify the certificate representing the shares upon which it intended to foreclose its lien, plaintiff is entitled to enjoin the foreclosure and any further action by defendant based upon the notice of termination dated August 23, 1995. This determination, based solely on the defendant Co-op’s failure to serve proper notice in accord with the Lease between the parties, is without prejudice to the commencement of proceedings to enforce the defendant’s rights, founded upon notice in conformity with the Lease provisions.
The causes of action for declaratory judgment and damages are severed and continued and the parties shall appear for a conference before this court at 9:00 a.m. on Thursday, May 2, 1996.