**WILLEMIJN HOUDSTERMAATSCHAPPIJ, BV, Petitioner–Appellant,**

v.

**STANDARD MICROSYSTEMS CORPORATION, Respondent–Appellee.**

No. 476, Docket 96–7623.

United States Court of Appeals, Second Circuit.

Argued Aug. 28, 1996.

Decided Jan. 2, 1997.

---

Paul E. Crawford, Wilmington, DE (Jeffrey B. Bove, James D. Heisman, Connolly, Bove, Lodge & Hutz, Wilmington, DE, of counsel), for Petitioner–Appellant.

Paul J. Hayes, Boston, MA (Victor B. Lebovici, Dean G. Bostock, Weingarten, Schurgin, Gagnebin & Hayes, Boston, MA, of counsel), for Respondent–Appellee.

Before: MESKILL and KEARSE, Circuit Judges.*

MESKILL, Circuit Judge:

The issue presented on appeal is whether the district court properly vacated an arbitration award. Plaintiff Willemijn Houdstermaatschappij, BV (Willemijn) appeals from an order of the United States District Court for the Southern District of New York,

* The Honorable J. Daniel Mahoney, who was a member of the panel, died on October 23, 1996, and the appeal is being decided by the remaining two members of the panel, who are in agreement. *See* Local Rule § 0.14(b).

Owen, *J.*, vacating Willemijn's arbitration award and denying Willemijn's petition to confirm the award. The district court found that the arbitrators manifestly disregarded the law. We disagree and accordingly vacate the order of the district court and remand the case with directions to confirm the award.

## BACKGROUND

### A. *The SMC Agreement*

Willemijn, a holding company incorporated in the Netherlands, is the owner of United States Reissue Patent No. 31,852 (the "'852 patent"). The '852 patent describes a data communication system for transmitting information between a central master computer and several subordinated terminal units. In October 1992, Standard Microsystems Corporation (SMC), a company incorporated in Delaware, entered into a patent license agreement with Willemijn (the "SMC Agreement"). The SMC Agreement granted SMC a non-exclusive license to manufacture and distribute data communication systems within the scope of the '852 license. The SMC Agreement also contained a most-favored-licensee (MFL) provision, pursuant to which SMC was entitled to receive the benefit of any more-favorable royalty terms subsequently granted by Willemijn to another licensee. The provision provides, in pertinent part:

> If WILLEMIJN, after execution of this agreement by both parties, grants a license under the ['852 patent] containing provisions that require payments at rates of royalty less than provided for in [the royalty provisions of this agreement], WILLEMIJN shall promptly notify [SMC] of those royalty provisions. [SMC] shall then be entitled, upon written request . . ., to substitute for [the royalty provisions of this agreement] the corresponding provisions of such other license but only if [SMC] also agrees to accept any other terms and conditions of such other license, identified by WILLEMIJN to [SMC].

The agreement also provided for arbitration of any disputes arising under the agreement.

### B. *The Proteon Agreement*

Well before the SMC Agreement was executed, Willemijn granted an '852 patent license to Proteon, Inc. (Proteon). In August of 1992, Proteon instituted an arbitration action against Willemijn pursuant to an arbitration provision in its license agreement with Willemijn. Proteon claimed that the '852 patent did not apply to products manufactured and sold by Proteon. An arbitration panel agreed, holding that Proteon's products were not within the scope of any of the '852 patent claims at issue. The panel ruled, therefore, that Proteon need not pay further royalties to Willemijn under the patent license agreement (the "Proteon Award").

In April 1994, Willemijn petitioned the arbitrators to reconsider and/or modify the award. Proteon responded with a Petition to Confirm the Proteon Award in the United States District Court for the Southern District of New York pursuant to 9 U.S.C. § 9. However, before the arbitrators or the court ruled on these petitions, Proteon and Willemijn reached a settlement and agreed to end any further litigation of this matter.

In an agreement dated May 11, 1994, well after the execution of the SMC Agreement, Proteon promised never to attempt at any future time in any forum to confirm the Proteon Award (the "Proteon Agreement"). In return, Willemijn promised Proteon that it would never seek modification, reconsideration, vacation and/or reversal of the Proteon Award. More importantly for the present case, Willemijn also granted Proteon immunity from suit under the '852 patent. Section 4.0 of the Proteon Agreement provides, in pertinent part, that "Willemijn and all successors in interest of Willemijn and/or of US patent Re. 31,852 hereby grant to Proteon immunity from suit under US Patent Re. 31,852, the reexamination certificate relating thereto, and all foreign counterparts thereof."

### C. *The SMC–Willemijn Arbitration Proceeding*

Based on Willemijn's grant of immunity to Proteon, SMC brought an arbitration proceeding against Willemijn for, among other

claims, breach of the SMC Agreement. Specifically, SMC claimed that by granting Proteon immunity from suit under the '852 patent, Willemijn had effectively given Proteon a "royalty-free license." Since this royalty-term was more favorable than the 2–3 percent royalty rate in the SMC Agreement, SMC argued that the MFL clause in the agreement entitled it to a royalty-free term. Because Willemijn failed to notify SMC of this more-favorable term, SMC contended that Willemijn breached the SMC Agreement.

The arbitration panel, without explanation, ruled in favor of Willemijn on all claims. On the breach of contract claim, two of the three arbitrators ruled in favor of Willemijn. Willemijn then filed a Petition for Confirmation of this arbitration award in the United States District Court for the Southern District of New York. SMC filed a Motion to Vacate only that part of the arbitrators' decision rejecting the breach of contract claim. The district court vacated the entire award, holding that the arbitration panel manifestly disregarded the law. The district court did not direct any further proceedings.

## DISCUSSION

We have appellate jurisdiction pursuant to 9 U.S.C. § 16(a)(1)(E), and we review *de novo* a district court's review of arbitration awards under the "manifest disregard of law" standard, *see Merrill Lynch, Pierce, Fenner & Smith v. Bobker,* 808 F.2d 930 (2d Cir.1986).

### A. *Manifest Disregard of the Law*

The showing required to avoid summary confirmation of an arbitration award is high, *Ottley v. Schwartzberg,* 819 F.2d 373, 376 (2d Cir.1987), and a party moving to vacate the award has the burden of proof, *see generally Matter of Andros Compania Maritima, S.A. of Kissavos (Marc Rich & Co., A.G.),* 579 F.2d 691, 700 (2d Cir.1978); *Folkways Music Publishers v. Weiss,* 989 F.2d 108, 111 (2d Cir.1993). Moreover, "[a]rbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Folkways Music,* 989 F.2d at 111. "[T]he court's function in confirming or vacating an arbitration award is severely limited." *Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp.,* 274 F.2d 805, 808 (2d Cir.1960). In addition to statutory grounds not present in this appeal, a district court may vacate arbitration awards when the arbitrators acted in manifest disregard of the law. *Wilko v. Swan,* 346 U.S. 427, 436–37, 74 S.Ct. 182, 187–88, 98 L.Ed. 168 (1953).

The "manifest disregard" test requires "something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law." *Siegel v. Titan Indus. Corp.,* 779 F.2d 891, 892 (2d Cir.1985) (per curiam) (internal quotations omitted). "Manifest disregard of the law may be found ... if the arbitrator 'understood and correctly stated the law but proceeded to ignore it.' " *Siegel,* 779 F.2d at 893 (quoting *Bell Aerospace Co. Div. of Textron v. Local 516,* 356 F.Supp. 354, 356 (W.D.N.Y.1973), *rev'd on other grounds,* 500 F.2d 921 (2d Cir.1974)).

It is difficult to apply this standard of review when arbitrators give no explanation for their decision. *See O.R. Securities v. Professional Planning Assoc.,* 857 F.2d 742, 747 (11th Cir.1988)("[W]hen the arbitrators do not give their reasons, it is nearly impossible for the court to determine whether they acted in disregard of the law."). However, since arbitrators are not required to provide an explanation for their decision, *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 598, 80 S.Ct. 1358, 1361–62, 4 L.Ed.2d 1424 (1960), a reviewing court must still perform the difficult task of evaluating the conduct and conclusions of the arbitrators.

"The problem is how a court is to be made aware of the erring conduct of the arbitrators." *Sobel v. Hertz, Warner & Co.,* 469 F.2d 1211, 1214 (2d Cir.1972). When arbitrators decline to provide an explanation for their decision, a reviewing court can only infer from the facts of the case whether "the arbitrator[s] appreciate[d] the existence of a clearly governing legal principle but de-

cide[d] to ignore or pay no attention to it." *Merrill Lynch,* 808 F.2d at 933.

In such a case we must confirm the arbitrators' decision "if a ground for the arbitrator[s'] decision can be inferred from the facts of the case." *Sobel,* 469 F.2d at 1216. This is so even if the ground for their decision is based on an error of fact or an error of law. *Siegel,* 779 F.2d at 892–93.

Conversely, a court may infer that the arbitrators manifestly disregarded the law if it finds that the error made by the arbitrators is so obvious that it would be instantly perceived by the average person qualified to serve as an arbitrator. *Merrill Lynch,* 808 F.2d at 933. However, determining whether to make this inference is not an easy task and a reviewing court must proceed with caution. If there is "even a barely colorable justification for the outcome reached," the court must confirm the arbitration award. *Andros Compania Maritima, S.A.,* 579 F.2d at 704.

B. *Most-Favored-Licensee Clause*

In the instant case, we find at least one barely colorable justification for the arbitrators' award. The parties disagreed over whether the Proteon Agreement triggered SMC's MFL clause. Without explanation, two of the three arbitrators reached the conclusion that the MFL clause was not triggered and that, therefore, Willemijn did not breach the SMC Agreement by failing to notify SMC of the Proteon Agreement. In both the district court and this Court, Willemijn offered three possible reasons why the arbitrators justifiably ruled in its favor. All of these arguments were presented to the arbitrators. First, Willemijn argued that since the Proteon Award already relieved Proteon of royalty payments, the subsequent immunity provision in the Proteon Agreement did not provide Proteon with a license that gave it any advantage over SMC. Because the grant of immunity gave Proteon no advantage over SMC, Willemijn argued that the MFL clause was not triggered. Second, Willemijn emphasized that the MFL clause could not be triggered unless a subsequent license was granted specifically containing provisions of "required payments" at lower

"rates of royalty." Because the clause granting immunity of suit to Proteon was silent as to "required payments" and "rates of royalty," Willemijn argued that the Proteon Agreement did not trigger the MFL clause in the SMC Agreement. Third, Willemijn emphasized the meaning of the last sentence of the MFL provision. This provision required SMC to accept all other terms and conditions of any subsequent agreement. Willemijn argued that because SMC could not promise to refrain from seeking confirmation of the Willemijn–Proteon arbitration award, SMC could not accept all terms of the Willemijn–Proteon agreement, and, therefore, had no right to the more-favorable royalty provision.

Because we find that the first argument provided the arbitrators with a justification for their decision that satisfies the "barely colorable" standard, we need not consider Willemijn's second and third arguments. We hold that the arbitrators did not manifestly disregard the law when ruling in favor of Willemijn.

The purpose of a most-favored-licensee clause is to protect a licensee from a competitive disadvantage resulting from more-favorable terms granted to another licensee. *Studiengesellschaft Kohle m.b.H. v. Novamont Corp. nna.,* 704 F.2d 48, 53 (2d Cir.1983). Therefore, the arbitrators were presented with the issue of whether the Proteon Agreement was a license that gave Proteon a commercial advantage over SMC.

As noted above, one of several arguments advanced by Willemijn during the arbitration proceeding was that it was the Proteon Award and not the subsequent Proteon Agreement that resulted in a competitive disadvantage for SMC. Willemijn presented testimony from its witnesses that the Proteon Agreement consisted of terms which were entirely consistent and precisely conformed with the Proteon Award. In addition, during cross-examination an SMC employee agreed that Proteon's commercial advantage resulted from the arbitration award freeing Proteon from royalty payments. Based on this testimony, Willemijn argued that Proteon was already relieved of

royalty payments at the time the Proteon Agreement was executed and the immunity clause did not provide Proteon with any advantage over SMC.

Based on this record, we conclude that the arbitrators could have justifiably rested their decision on this argument, even if it is based on an erroneous interpretation of the law. *See Novamont,* 704 F.2d at 53 (fact that subsequent licensee, who was provided with a more-favorable royalty term, could have manufactured and sold patented product without license "is not germane to any purpose of the MFL clause").

Indeed, the Proteon Award evidently only provided Proteon with immunity from suit based on the products they were manufacturing at the time. The arbitration award, therefore, does not seem to give Proteon total immunity from suit under the '852 patent. On the other hand, the Proteon Agreement arguably grants Proteon full immunity for any product that may have been subject to the '852 patent. Therefore, the Proteon Agreement may provide greater immunity to Proteon than the arbitration award.

However, "[e]ven if we were to disagree with the arbitration panel's interpretation or conclusion, ... we could not say that the arbitration panel manifestly disregarded the law." *W.K. Webster & Co. v. American President Lines, Ltd.,* 32 F.3d 665, 669 (2d Cir.1994). We only need decide whether there is any colorable justification for their decision. Whether the grant of immunity gave Proteon anything more than they had already received from the Proteon Award was an issue raised and argued by both parties at the arbitration proceeding. We cannot say that the law as applied to the facts of this case is so clear and obvious that there was an error that an average person qualified to serve as an arbitrator should have instantaneously perceived and corrected.

## CONCLUSION

Because SMC has not satisfied its burden of showing that the arbitrators manifestly disregarded the law, the district court should have confirmed the arbitration award.

Therefore, we vacate the order of the district court and remand the case with directions to confirm the entire arbitration award.

We note that SMC only petitioned the district court for vacatur of the arbitrators' decision on the breach of contract claim. Therefore, the district court erroneously vacated other portions of the award and should be careful to confirm the entire award on remand.