THE GMS GROUP, LLC and Joseph Costa, Plaintiffs–Appellants,

v.

Nathan BENDERSON, Defendant–Appellee.

Docket No. 02–7129.

United States Court of Appeals, Second Circuit.

Argued Nov. 8, 2002.

Decided: April 7, 2003.

Lionel G. Hest, New York, N.Y. (Fulbright & Jaworski LLP, of counsel), for Plaintiffs–Appellants.

Krista Gottlieb, Buffalo, N.Y. (Mattar & D'Agostino, LLP, of counsel), for Defendant–Appellee.

Before WALKER, Chief Judge, OAKES and MINER, Circuit Judges.

OAKES, Senior Circuit Judge.

The GMS Group, LLC, a securities broker-dealer, and its employee, Joseph Costa (hereinafter collectively "GMS"), appeal from a judgment of the United States District Court for the Western District of New York, John T. Curtin, *Judge,* confirming the arbitration award of a panel of National Association of Securities Dealers ("NASD") arbitrators, made without written opinion, in favor of Nathan Benderson, a customer of GMS and Costa. GMS argues that the district court applied an improper standard of review to the award. It also argues that, regardless of the standard used, the district court's conclusion that the award was justified is not supported by the record. It contends that the NASD arbitrators manifestly disregarded both the relevant law and evidence when making their determination. We affirm.

## BACKGROUND

This case stems from a series of purchases made by GMS, on behalf of Benderson, of puts on the S & P 100 stock index—also known as OEX options—which enable buyers like Benderson to exercise the right to sell the equivalent of the group of securities listed on the S & P 100 at a predetermined price until a specified date.[1] The first options purchase took place in December 1996, and the last options expiration was in May 1997. Over this time period, Benderson lost roughly $1.5 million trading in OEX options. Benderson initi-

ated arbitration proceedings against GMS and Costa in 1998, alleging common law fraud, breach of contract, breach of fiduciary duty, negligence, and violations of the Securities Exchange Act of 1934.

Following an eleven-day proceeding before a panel of NASD arbitrators, the panel awarded Benderson $150,000 on his claims, but did not issue a written opinion. GMS moved to have the award set aside by the district court. In a written opinion, the district court declined to vacate the award and thereafter entered a judgment confirming it. The court's decision is reported as *GMS Group, LLC v. Benderson,* 191 F.Supp.2d 318 (W.D.N.Y.2001). GMS now appeals to this court.

## DISCUSSION

GMS argues that the district court applied an inappropriate standard of review to the arbitration award in this case. Specifically, it challenges the district court's formulation of the long-standing "manifest disregard of the law" standard applied by courts when a party seeks to vacate an award. In its argument, GMS relies in part on the fact that a federal statute is potentially at issue in this case. It points to the principle that an individual's substantive rights, especially federal statutory rights, ought not be compromised when participating in arbitration, *see, e.g., Shearson/Am. Express Inc. v. McMahon,* 482 U.S. 220, 232, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) ("[T]he streamlined procedures of arbitration do not entail any consequential restriction on substantive rights."); *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) ("By agreeing to arbitrate a statutory claim, a party does not forgo the substan-

---

1. This right would only be of value in the event that the index declined, for then the original option seller is forced to settle with the option buyer for the difference between the predetermined exercise, or strike, price and the lower market price.

tive rights afforded by the statute ....."), and argues that a district court's standard of review must be designed to safeguard this principle. We deal with this argument as an initial matter, before reaching GMS's challenge to the award itself.

■ When a party challenges the district court's review of an arbitral award under the manifest disregard standard, we review the district court's application of the standard *de novo. Greenberg v. Bear, Stearns & Co.,* 220 F.3d 22, 28 (2d Cir. 2000). Here, although the court ultimately concluded that justification for the award could "easily be found" in the record before the arbitrators, it noted that it need only determine whether there was "any justification" in the record. *GMS Group,* 191 F.Supp.2d at 326. Furthermore, it stated that, "at a minimum" there was a "barely colorable justification" (quoting this court's decision in *Willemijn Houdstermaatschappij, BV v. Standard Microsys. Corp.,* 103 F.3d 9, 13 (2d Cir.1997)), and thus GMS had failed to demonstrate that the arbitrators acted in manifest disregard of the law. 191 F.Supp. at 325. GMS contends that this "barely colorable justification" or, alternately, "any justification" formulation is inadequate to insure that a party's federal statutory rights have been protected in an arbitration proceeding, and that it is at odds with a later formulation of the manifest disregard standard by this court in *Halligan v. Piper Jaffray, Inc.,* 148 F.3d 197, 203–04 (2d Cir.1998).[2]

At the outset, we note that Benderson advanced numerous theories of recovery against GMS in his action, only some of which implicated the Securities Exchange Act, and that the panel did not issue a written opinion when making its award. Thus, it is far from clear that the award implicates federal statutory rights. Nevertheless, because the arbitrators' award in this case *may* implicate a federal statutory claim, for purposes of this discussion, we will assume it does. We also note GMS is not challenging the manifest disregard standard itself as inadequate, but, rather, the district court's explication of that standard. Indeed, as discussed in more detail below, manifest disregard of the law continues to be the governing standard, and our decisions have done nothing to alter that.

■ Over time we have stated many, varied formulations of the manifest disregard standard in an attempt to give it better definition. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker,* 808 F.2d 930, 933 (2d Cir.1986) (noting "bounds of [manifest disregard] have never been defined"); *Siegel v. Titan Indus. Corp.,* 779 F.2d 891, 892 (2d Cir.1985) (per curiam) ("Precisely what the 'manifest disregard' test requires is not yet clear."). We have recently provided an extensive and comprehensive recapitulation of our case law in this area, *Westerbeke Corp. v. Daihatsu Motor Co.,* 304 F.3d 200, 208–10, 212–14 & n. 8, 217–18 (2d Cir.2002), and, thus, we will not repeat it here. Briefly, however, and as a general matter, it is well established that, under the manifest disregard standard, it requires "more than a mistake of law or a clear error in fact finding" to disturb an award. *Goldman v. Architectural Iron Co.,* 306 F.3d 1214, 1216 (2d Cir.2002). Nor is the failure of the arbitrators to understand the law, or to apply it appropriately, sufficient. *See*

---

**2.** In addition to the district court's conclusions regarding justification for the award quoted above, it *rejected* GMS's argument under *Halligan* that the record in this case provided "strong" and "overwhelming" evidence in its favor such that it would form a premise for finding that the arbitrators engaged in manifest disregard of the law or evidence or both. *The GMS Group,* 191 F.Supp.2d at 324.

*Standard Microsys.*, 103 F.3d at 12. "Manifest disregard can be established only where a governing legal principle is well defined, explicit, and clearly applicable to the case, and where the arbitrator ignored it after it was brought to the arbitrator's attention in a way that assures that the arbitrator knew its controlling nature." *Goldman*, 306 F.3d at 1216 (internal quotation omitted).

█ Insofar as delineating at baseline what will withstand manifest disregard review, especially where there is no written opinion, we have stated " '[i]f *a* ground for the arbitrator's decision can be inferred from the facts of the case, the award should be confirmed.' " *Fahnestock & Co. v. Waltman*, 935 F.2d 512, 516 (2d Cir. 1991) (quoting *Sobel v. Hertz, Warner & Co.*, 469 F.2d 1211, 1216 (2d Cir.1972)) (emphasis added); *see also Standard Microsys.*, 103 F.3d at 13; *Siegel*, 779 F.2d at 894. In other words, if "any justification" can be gleaned from the record, as the district court noted, the award must be confirmed. We have also stated "we will confirm the award if we are able to discern any colorable justification for the arbitrator's judgment, even if that reasoning would be based on an error of fact or law." *Westerbeke*, 304 F.3d at 212 n. 8; *see Standard Microsys.*, 103 F.3d at 13 ("If there is even a barely colorable justification for the outcome reached, the court must confirm the arbitration award.") (internal quotation omitted). Thus, the district court's formulation is at least consistent with these statements.

GMS argues, however, that our decision in *Halligan* established a greater level of scrutiny under the manifest disregard standard for federal statutory claims, a course of action GMS contends we hinted at in our decision in *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818 (2d Cir.1997). *Halligan* and *DiRussa* both in-

volved arbitration of claims of employment discrimination brought under federal anti-discrimination provisions. *Halligan*, 148 F.3d at 198; *DiRussa*, 121 F.3d at 820.

In *DiRussa*, an employee argued that the deferential manifest disregard standard should not apply to arbitral awards on federal statutory claims *at all*, based on grounds similar to the ones asserted here by GMS. *DiRussa*, 121 F.3d at 821. Because the employee had failed to preserve this specific argument for appeal, we did not reach the question. *Id.* at 822. The employee also made a somewhat related argument, however, in the context of urging this court to vacate the portion of the arbitration award at issue as against public policy simply because it was an erroneous application of federal statutory law. *Id.* at 825. In response, we first expressed "doubt that the Supreme Court intended to invite this type of *plenary review* of arbitration awards when it held in *Gilmer* [*v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 35, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991)] that statutory claims pursuant to the ADEA were arbitrable." 121 F.3d at 825 (emphasis added). We then went on to note that the employee's argument on public policy grounds essentially resolved down to the same question he had failed to preserve for appeal, namely, "whether a standard of review less deferential than 'manifest disregard' may be appropriate when certain federal statutory rights are involved," and declined to reach it. *Id.* If anything, then, *DiRussa* hints at our reluctance to establish differing standards of review applicable to arbitration awards based on the nature of the underlying claims, or at least to engage in "plenary review" of an award simply because it involves a federal statutory claim.

In the later case of *Halligan*, we did take note of the general misgivings courts and commentators have expressed about

the effectiveness of arbitration procedures in the context of employment discrimination claims. *Halligan*, 148 F.3d at 201–03. Among the issues we recognized were whether the composition of industry-specific panels were ill-suited to the nature of the claims, and whether employees were receiving due process in the course of arbitration. *Id.* at 202–03.

Above and beyond the fact that we ultimately did not address these questions because of the disposition of the employee's appeal in that case, *id.* at 203, much of our discussion was confined to the unique concerns at issue with employment discrimination claims. These concerns do not translate to the claims at issue in this case. *Cf. Chisolm v. Kidder, Peabody Asset Mgmt., Inc.*, 966 F.Supp. 218, 224–27 (S.D.N.Y.1997) (while noting legitimate concerns about arbitration of employment discrimination claims, rejecting party's argument that a more stringent standard of review should apply to *all* awards implicating a federal statute as "unduly broad"), *aff'd mem.*, 164 F.3d 617 (2d Cir.1998). Additionally, we did not specifically address the standard of review question we took note of in *DiRussa*, as it does not appear to have even been raised by the parties in *Halligan*. Rather, our recitation of the standard of review in *Halligan* mirrored the traditional standard stated above. *Halligan*, 148 F.3d at 202.

Notwithstanding this lack of contention regarding the standard of review among the parties in *Halligan*, GMS argues that we went on to hold that simply when there is "strong," *id.* at 204, or "overwhelming," *id.* at 203, evidence in an appealing party's favor, the award should be vacated. GMS takes those words out of context, though. In *Halligan*, there was *no* dispute about the controlling law. *Id.* at 200, 204. Additionally, there was no written opinion, and, thus, no findings of fact. Accordingly, we

were obligated to attempt to determine the relevant facts on our own. *See Westerbeke*, 304 F.3d at 213 n. 9 (noting *Halligan* presented unique circumstance of appellate court's attempting to glean facts potentially found by arbitrators—the only matter of dispute on appeal—and noting *Halligan* did not stand for proposition that fact-finding on the record was subject to independent judicial review). We noted that there was "overwhelming" and "strong" evidence of particular legally dispositive *facts*. In light of the fact that the controlling law was undisputed and had been called to the attention of the arbitrators, we could only conclude that they had disregarded it, as any other explanation would strain credulity given the quantity and quality of evidence of these *facts*. *Halligan*, 148 F.3d at 204. We stress, again, that we reached this conclusion applying the traditional manifest disregard standard.

Lastly, in the intervening period since our decisions in *DiRussa* and *Halligan*, we have continued to apply the same manifest disregard standard that pre-dated those decisions, *see, e.g., Goldman*, 306 F.3d at 1215; *Westerbeke*, 304 F.3d at 208; *Pike v. Freeman*, 266 F.3d 78, 86 (2d Cir.2001), and have even done so in a case involving a federal statutory claim brought under the Securities Exchange Act of 1934, *see Greenberg*, 220 F.3d at 28. In those decisions, we have given no indication that different standards apply to arbitral awards depending on the nature of the claims underlying them.

GMS also argues in the alternative that a basis for a more stringent manifest disregard standard can be distilled from several Supreme Court cases, among them *McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185, and *Gilmer*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26, which adjudicated the arbitrability of particular types

of federal statutory claims. As a consequence, it argues, the district court's decision is at odds with Supreme Court precedent to the degree that it did not require, as part of its review, that the arbitrators "follow the law." Put another way, GMS argues that, contrary to our enunciation of the general standard as stated above, a simple mistake of federal statutory law *does* constitute manifest disregard of the law.

As an initial matter, the cases GMS relies on do not address the standard of review to be applied following arbitration, but instead address the threshold question of whether particular types of claims are arbitrable in the first instance. *See, e.g., Gilmer*, 500 U.S. at 23, 111 S.Ct. 1647 (arbitrabiilty of claim arising under ADEA); *McMahon*, 482 U.S. at 221, 107 S.Ct. 2332 (arbitrability claims arising under RICO and the Securities Exchange Act of 1934); *Mitsubishi Motors*, 473 U.S. at 616, 105 S.Ct. 3346 (arbitrability of claims arising under the Sherman Act). Thus, these decisions do not embody the controlling law on the question of standard of review. *See also Chisolm*, 966 F.Supp. at 227 (rejecting argument that a more stringent standard of manifest disregard review exists for statutory claims as "essentially premised on dicta in" *Gilmer, McMahon*, and *Mitsubishi*).

Furthermore, to the degree that the Court did address standard of review in these cases, it noted that the traditional standard applied *was* sufficient to protect a party's rights. *Gilmer*, 500 U.S. at 32 n. 4, 111 S.Ct. 1647 (rejecting argument that parties to arbitration are unable to obtain effective appellate review or that judicial review is "too limited"); *McMahon*, 482 U.S. at 232, 107 S.Ct. 2332 (noting judicial scrutiny of arbitration awards "necessarily is limited," but sufficiently ensures that arbitrators comply with law). In so doing,

the Court neither implied that a more stringent standard of review should be applied to federal statutory claims, nor differentiated between federal statutory claims and common law claims. *Cf. Mitsubishi*, 473 U.S. at 626–27, 105 S.Ct. 3346 (noting with regard to question of enforcing agreements to arbitrate, there is generally no reason to distinguish claims founded on statutory rights when applying policy favoring arbitration); *McMahon*, 482 U.S. at 226, 107 S.Ct. 2332 (duty to enforce agreements to arbitrate not diminished when claim founded on statutory rights).

Finally, any solicitousness the Court has expressed for a party's substantive rights in arbitration was on behalf of *claimants* under federal statutes, not defendants like GMS. *See, e.g., Gilmer*, 500 U.S. at 33, 111 S.Ct. 1647 (noting concern over unequal bargaining power in employer-employee relationship when enforcing agreement to arbitrate age discrimination claim, but concluding it is best left for resolution on a case-by-case basis); *Rodriguez de Quijas v. Shearson/Am. Express Inc.*, 490 U.S. 477, 480–81, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) (noting historical concern for protecting securities buyers, and suspicion that arbitration weakened "the protections afforded in the substantive law to *would-be complainants*") (emphasis added). Thus, arguably the heightened scrutiny advocated by GMS should only apply to *denials* of claims by arbitrators, as opposed to awards in a federal statutory claimant's *favor*.

In conclusion, we discern no basis for establishing two tiers of manifest disregard review as GMS urges. Nor do we agree with GMS's reading of *Halligan* as doing so. Consequently, we cannot agree with GMS's contention that the district court applied a standard of review at odds with either this court's or the Supreme

Court's precedents. Having reached this conclusion, we turn to GMS's argument that the award cannot be confirmed under any formulation of manifest disregard.

We have repeatedly stressed that our review under the doctrine of manifest disregard is "severely limited." *Westerbeke*, 304 F.3d at 208 (internal quotation omitted). As the party challenging the award in this case, GMS bears the heavy burden of demonstrating the NASD arbitrators manifestly disregarded the law. *See id.* at 209; *Folkways Music Publishers, Inc. v. Weiss*, 989 F.2d 108, 111 (2d Cir.1993); *see also Standard Microsys.*, 103 F.3d at 12 ("The showing required to avoid summary confirmation of an arbitration award is high."). As noted above, in order to do so, it must show that "a governing legal principle is well defined, explicit, and clearly applicable to the case, and ... the arbitrator ignored it after it was brought to the arbitrator's attention in a way that assures that the arbitrator knew its controlling nature." *Goldman*, 306 F.3d at 1216 (internal quotation omitted); *see also Sidarma Societa Italiana Di Armamento SpA, Venice v. Holt Marine Indus., Inc.*, 515 F.Supp. 1302, 1309 (S.D.N.Y.) (party must show arbitrators "deliberately disregarded what they knew to be the law in order to reach the result they did"), *aff'd mem.*, 681 F.2d 802 (2d Cir.1981). "Both of these prongs must be met" before we will disturb an award. *Westerbeke*, 304 F.3d at 209.

When approaching this analysis, we assume that, with regard to the applicable law, the panel of arbitrators is "a blank slate unless educated in the law by the parties." *Goldman*, 306 F.3d at 1216. Benderson advanced numerous theories of recovery against GMS, including common law fraud, breach of contract, breach of fiduciary duty, negligence, and violations of the Securities Exchange Act of 1934,

and, as we have noted, the panel did not issue a written opinion to accompany its award. *Cf. Wall Street Assocs. v. Becker Paribas, Inc.*, 818 F.Supp. 679, 686 (S.D.N.Y.1993) (noting party's burden is especially high where "numerous legal theories are presented to a panel, and the award is rendered without opinion"), *aff'd*, 27 F.3d 845 (2d Cir.1994). Nevertheless, on appeal GMS limits its argument that the arbitrators ignored the governing law to the claims of fraud and violation of the Securities Exchange Act, focusing primarily on the claimed violation of the Act. It does so despite the fact that the district court concluded alternately that the arbitrators' decision was justified under Benderson's theories that Costa breached both his fiduciary and professional duties in the course of their interaction regarding the purchase of the OEX options. *GMS Group*, 191 F.Supp.2d at 325.

Ignoring for the moment that GMS has failed to even attempt to demonstrate that an award based on these theories would necessarily be in manifest disregard of the law, we will address GMS's specific arguments with regard to the securities claim, as we cannot agree that they provide a rationale for setting aside an award based on that theory.

■■■ GMS contends that the arbitrators' award cannot be squared with the requirement that Benderson establish both that Costa made a "recommendation" to him, and that it was not "suitable" in order to show a violation of either § 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b) (2002), or Rule 10(b)(5) promulgated thereunder, 17 C.F.R. § 240.10b–5 (2002). These terms are found in NASD Rules 2860(19) and 2310, which govern the conduct of NASD members and concern the suitability of securities recommenda-

tions.[3] Although arguably there is no right of action simply for a violation of NASD rules, *see SSH Co. v. Shearson Lehman Bros., Inc.*, 678 F.Supp. 1055, 1058 (S.D.N.Y.1987) (holding no private action exists for customer against broker based on violation of NASD rules); *see also Desiderio v. Nat'l Ass'n Sec. Dealers Inc.*, 191 F.3d 198, 208 (2d Cir.1999) (stating no private right of action available against an *exchange* for failure to follow its own rules); *but see Zerman v. Ball*, 735 F.2d 15, 23 (2d Cir.1984) (declining to reach question whether private right of action available to customer against broker for violation of NASD rules), violations may be considered relevant for purposes of § 10(b) unsuitability claims. *See generally Brown v. E. F. Hutton Group, Inc.*, 991 F.2d 1020, 1031 (2d Cir.1993) (describing nature of "unsuitability" claim under § 10(b) of Securities Exchange Act).

While Rules 2860(19) and 2310 had been submitted to the arbitrators as part of the record in this case, GMS neither points this court to case law interpreting the terms "recommendation" or "suitability," nor points to anywhere in the record where such law was brought to the attention of the arbitrators. *Cf. DiRussa*, 121 F.3d at 823 (noting party failed to call arbitrators' attention to particular provision in statute that he claimed panel disregarded); *Carte Blanche (Singapore) Pte., Ltd. v. Carte Blanche Int'l, Ltd.*, 888 F.2d 260, 268 (2d Cir.1989) (case that provided rule contrary to that applied by arbitrators never cited to panel). Furthermore, although a § 10(b) claim can be founded on a theory of unsuitability, it is not clear that the NASD provisions regarding suitability are themselves tantamount to "law" for purposes of reviewing an arbitral award for manifest disregard. Finally, even as-

suming that the NASD rules are "law," we cannot conclude on this record that the arbitrators would be in manifest disregard of such by making an award to Benderson.

Instead of case law, GMS relied on testimony from their expert that Costa's interaction with Benderson was not the equivalent of a "recommendation," and that, even if his statements were a "recommendation," it would have been "suitable" under the NASD rules. In other words, GMS submitted expert opinion on the result of applying the NASD rules to the facts of this case. We have stated, however, that we will not find manifest disregard of the law where an arbitral award rests on the "application of 'an unclear rule of law to a complex factual situation.'" *Goldman*, 306 F.3d at 1217 (quoting *Bobker*, 808 F.2d at 938 (Meskill, J., concurring)). Here we have both; for Benderson and Costa gave conflicting testimony regarding the details of their interaction leading up to and during the options purchases. Additionally, despite GMS's expert testimony that Costa's actions did not amount to a "recommendation," the expert also testified that there is no set definition of the term in the securities industry and that it is a fact-specific inquiry. The expert then provided a spectrum of activity, some of which he stated would clearly not be considered "recommendations" and some of which would be. GMS's second expert stated that, if Benderson's version of the facts were true, he and Costa's interaction would be a "partial recommendation," although not rising to the level of a "full recommendation." Finally, the arbitrators, having both the NASD rules and all the record testimony before them, could simply have rejected the first expert's conclusion that, based on the evidence adduced before the panel, the recommenda-

---

**3.** NASD Rule 2860(19) specifically concerns the purchase and sale of option contracts, while NASD Rule 2310 governs transactions in any security.

tion would have been a "suitable" one. Thus, given the state of the record, "[w]e cannot say that *the law as applied to the facts of this case* is so clear and obvious that there was an error that an average person qualified to serve as an arbitrator should have instantaneously perceived and corrected." *Standard Microsys.*, 103 F.3d at 14 (emphasis added).

## CONCLUSION

Because the district court applied an appropriate level of scrutiny to the arbitral award in this case and the ruling was not made in manifest disregard of well defined, explicit, and clearly applicable law, we affirm the judgment of the district court confirming the arbitrators' award.