**In the Matter of the ARBITRATION BETWEEN R. Kent ATHERTON, Petitioner,**

**and**

**ONLINE VIDEO NETWORK, INC. d/b/a Cenus Technologies, Respondent.**

No. 03 Civ. 1687(SHS).

United States District Court, S.D. New York.

Aug. 1, 2003.

Nathan V. Bishop, Friedman, Wolf & Grisi, New York City, David C. Kurtz, Choate, Hall & Stewart, Boston, MA, for Petitioner.

Stephen J. Carmody, Hogan & Hartson LLP, New York City, for Respondent.

## OPINION

STEIN, District Judge.

R. Kent Atherton has petitioned this Court to modify, or in the alternative, partially vacate, an arbitration award on the grounds that the arbitrators manifestly disregarded the law in rendering their decision. In response, Online Video Network, Inc., doing business as Cenus Technologies ("Cenus"), has moved to confirm the award. As set forth below, this is not one of those "exceedingly rare instances" where "some egregious impropriety on the part of the arbitrators is apparent." *Duferco Int. Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 389 (2d Cir. 2003). Atherton's petition is accordingly denied and Cenus's motion to confirm the award is granted.

## I. BACKGROUND

The following facts are not contested: Cenus, an "internet software company," recruited Atherton, an experienced marketing executive, to head its sales and marketing of an "on-line streaming video product." (Arbitration Panel Award, Background at ¶ 2). The parties entered into an Executive Employment Agreement (the "Agreement") effective March 3, 2000, for three years' duration, during which time Atherton would be Cenus's Senior Vice President—Marketing and Sales, at a base salary of $250,000. *Id.* In early 2001, Cenus reduced Atherton's salary to $150,000 per year, and in October, 2001, Cenus further reduced his salary to $120,000 per year. (*Id.* at ¶ 10).

By letter dated February 22, 2002—four months after the most recent reduction in his base salary—Atherton terminated his employment with Cenus, pursuant to the "Termination for Good Reason" provision of the Agreement, which entitled Atherton to certain compensation, including six months extra salary plus all his options, whether vested or not, if he terminated his employment for "Good Reason." (*Id.* at ¶ 11). The Agreement defined "Good Reason," in pertinent part, as any reduction of Atherton's base salary. (*See* Agreement § 5(e)). However, a reduction in base salary would not constitute "Good Reason" unless Atherton gave Cenus written notice within 15 calendar days after Atherton knew or should have known of the reduction in his base salary and Cenus thereafter failed to cure the event within thirty days after receipt of that notice. (*See id.*).

The Agreement included a "non-waiver" clause that provided that "no provision in this agreement could be amended [or waived] unless such amendment [or waiver] is agreed to in writing" by both Atherton and Cenus. (*See id.* § 10). The Agreement also contained an arbitration clause that provided that "[a]ny disputes arising under or in connection with this Agreement" were subject to binding arbitration in accordance with the Commercial

Arbitration Rules of the American Arbitration Association ("AAA"). (*See id.* § 13). The Agreement provided in addition that "[t]he award of the arbitrators shall be final and nonappealable." (*Id.*).

Pursuant to the February 22 letter in which he terminated his employment, Atherton sought to be compensated in accordance with the terms of the "Good Reason" provision of the contract, but Cenus refused to do so. Atherton subsequently invoked the Agreement's arbitration provision, and filed a claim with the Arbitration Panel of the AAA (the "Panel" or "the arbitrators") alleging breach of contract and violation of the New York and Connecticut wage payment statutes. The Panel denied Atherton's claims and ruled that he did not terminate his employment for "Good Reason," because he did not notify the company in writing within 15 days of knowing of the reduction in his salary. (*See id.*, Award of Arbitrator at ¶¶ 1–6).

Atherton then filed a "Motion for Modification of Award" with the arbitrators, claiming that they had not addressed his breach of contract claim for unpaid wages. That motion was denied on the grounds that the Panel's authority to modify an award was limited to correcting "any clerical, typographical or computational errors in the award." (*See* Ruling on Motion for Modification of Award). Atherton does not contest the Panel's determination that he did not terminate his employment with "Good Reason." However, he claims that the Panel "manifestly disregarded the law" by ignoring his breach of contract claim. He now moves this Court to modify, or in the alternative, partially vacate, the Panel's award.

## II. DISCUSSION

### A. "Manifest Disregard of the Law"

■■■ As the U.S. Court of Appeals for the Second Circuit wrote approximately one month ago in an analogous case, "[I]t is well established that courts must grant an arbitrator panel's decision great deference." *Duferco Int. Steel Trading v. T. Klaveness Shipping A/S,* 333 F.3d 383, 388 (2d Cir.2003). The Federal Arbitration Act (the "FAA") permits a district court to vacate an arbitration award in certain narrow circumstances, all of which "invoke corruption, fraud or some other impropriety on the part of the arbitrators." *Id.; see* 9 U.S.C. § 10(a).[1] In addition, the Second Circuit has also recognized that an arbitration award may be vacated if it is in "manifest disregard of the law." *See Duferco,* 333 F.3d at 388; *Halligan v. Piper Jaffray, Inc.,* 148 F.3d 197, 202 (2d Cir.1998) (citing *Wilko v. Swan,* 346 U.S. 427, 436–37, 74 S.Ct. 182, 187, 98 L.Ed. 168 (1953)). However, manifest disregard is "severely limited," *Duferco,* 333 F.3d at 388 (quoting *Gov't of India v. Cargill Inc.,* 867 F.2d 130, 133 (2d Cir.1989)), and judicial review is "highly deferential to the arbitral award and obtaining judicial relief for arbitrators' manifest disregard of the law is rare." *Id.* at 389. This doctrine is one "of last resort" and is to be limited to "those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent." *Id.*

---

1. Section 10(a) permits a district court to vacate an arbitration award "(1) where the award was procured by corruption, fraud or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a).

■ An arbitrator's award is in "manifest disregard of the law" in those cases "where a governing legal principle is well defined, explicit, and clearly applicable to the case, and where the arbitrator ignored it after it was brought to the arbitrator's attention in a way that assures that the arbitrator knew its controlling nature.'" *GMS Group, LLC v. Benderson,* 326 F.3d 75, 78 (2d Cir.2003) (quoting *Goldman v. Architectural Iron Co.,* 306 F.3d 1214, 1216 (2d Cir.2002)). "A legal principle clearly governs the resolution of an issue before the arbitrator if its applicability is 'obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator.'" *Westerbeke Corporation v. Daihatsu Motor Co.,* 304 F.3d 200, 209 (2d Cir.2002) (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker,* 808 F.2d 930, 933 (2d Cir.1986)).

■ The petitioner has the burden of demonstrating "the existence of a clearly governing legal principle [and] the arbitrator's manifest disregard of such a principle." *Id.* In line with the general policy in favor of arbitration, "if a ground for the arbitrator's decision can be inferred from the facts of the case, the award should be confirmed." *GMS Group,* 326 F.3d at 78 (quotation omitted); *Westerbeke,* 304 F.3d at 212 n. 8 (courts are "obliged to give the arbitral judgment the most liberal reading possible....) [W]e will confirm the award if we are able to discern any colorable justification for the arbitrator's judgment, even if that reasoning would be based on an error of fact or law." *Id.* at 212 n. 8.

**B. The Governing Legal Principle**

■ Atherton contends that *Bigda v. Fischbach Corp.,* 898 F.Supp. 1004 (S.D.N.Y.1995), aff'd, 101 F.3d 108 (2d Cir. 1996) (unpublished disposition), sets forth the governing legal principle that the Panel manifestly disregarded in determining his breach of contract claim. In *Bigda,* the district court determined that because an employee elected to continue his employment rather than terminate an employment agreement, he had waived his right to seek liquidated damages. *Bigda,* 898 F.Supp. at 1014. However, the court noted, in dicta and without case law authority, that because the employment agreement contained a non-waiver clause[2] the plaintiff never lost his right to seek damages pursuant to a breach of contract claim. *See id; see also Cerrone v. Brown,* 246 F.3d 194, 202 (2d Cir.2001) ("A district court opinion affirmed by an unpublished table decision does not determine whether a right was clearly established.").

Cenus contends that *Bigda* is factually distinguishable from this action in a material respect and therefore the asserted governing legal principal is not "'well defined, explicit and clearly applicable.'" *Westerbeke,* 304 F.3d at 216 (quotation omitted). Specifically, Cenus contends that the Agreement contains a notice provision—providing that Atherton's termination could not be considered "Termination With Good Reason" unless Atherton notified Cenus of the breach of contract within fifteen days—that the employment agreement in *Bigda* did not contain.

Cenus is correct. The notice provision in the Agreement makes the case at bar factually distinguishable from *Bigda* in a material respect. Several New York courts have determined that failure to provide notice pursuant to a contractual provision effectively abrogated that contract's

---

2. The non-waiver clause in *Bigda* stated that "[n]o provisions of this Agreement may be modified, waived or discharged unless such waiver, modification or discharge is agreed to in writing signed by Employee and an officer of Employer." *Bigda,* 898 F.Supp. at 1013.

non-waiver provision. *See Gimbel Holding Co. v. Hirschman*, 1997 WL 724562, *4 (S.D.N.Y. Nov. 19, 1997); *Winfield Capital Corp. v. Mahopac Auto Glass, Inc.*, 208 A.D.2d 715, 617 N.Y.S.2d 499 (2d Dep't 1994); *Troiano v. 55 Ehrbar Tenants Corp.*, 168 Misc.2d 906, 645 N.Y.S.2d 975 (1996) (despite non-waiver provision in lease, landlord waived his right to terminate lease and claim default by accepting monthly payments and by failing to serve notice as required by the lease).

For example, in *Winfield*, the court held that a non-waiver clause did not bar waiver of the landlord's breach of contract claim where the landlord failed to provide notice as required by the terms of the lease. Similarly, here the Panel was entitled to determine that Atherton waived the non-waiver clause of the Agreement by (1) continuing to work after Cenus twice reduced his base salary and (2) failing to provide timely notice pursuant to the terms of the "Termination of Employment" provision of the Agreement. (*See* Agreement § 5). As the Panel wrote, "Claimant, an executive, knowingly continued to work for Respondent after the salary changes were announced and implemented. Claimant was free under the statutes to terminate his employment for that reason, but did not timely assert his contractual Good Reason for the termination." (*See* Award of Arbitrator, Findings and Conclusions at ¶ 25).

Accordingly, Atherton's reading of *Bigda* does not constitute the "governing legal principle" for the arbitration here.[3] *Westerbeke*, 304 F.3d at 216. There is a colorable justification for the Panel's decision to not award damages due to breach of con-

tract—therefore, the Panel's decision has met the baseline for delineating what will withstand "manifest disregard review based on the standard of the law." *See Westerbeke*, 304 F.3d at 212 n. 8; *GMS Group*, 326 F.3d at 78; *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 13 (2d Cir. 1997). This Court notes that "whether appellees actually raised the issues reflected in the district court's reading of the award is immaterial. In construing an arbitral award we look only to plausible readings of the award, not to probable readings of it." *Duferco*, 333 F.3d at 392. Atherton's motion to modify, or in the alternative, partially vacate the Panel's award should be denied.

## III. CONCLUSION

For the reasons set forth above, Atherton has failed to prove that the arbitrators manifestly disregarded the law. Therefore, Atherton's petition to modify or vacate the arbitration award is denied and Cenus's motion to confirm that award is granted.

---

3. Because this Court concludes that *Bigda* does not contain a "governing legal principle" that is "well defined, explicit and clearly applicable to this case," *GMS Group*, 326 F.3d at 81 (quoting *Goldman*, 306 F.3d at 1216), that was ignored by the Panel, there is no need to analyze whether Atherton's interpretation of *Bigda* was brought to the Panel's attention in a way that assures the Panel knew its controlling nature. *See Westerbeke*, 304 F.3d at 209.